UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELLE LUGONES, TRICIA RIZZI, MARCUS SIEZING, and CLAUDIA VASALLO, individually, and on behalf of a proposed class, <br><br> Plaintiffs, <br><br> v. <br><br> PETE AND GERRY'S ORGANICS, LLC and NELLIE'S FREE RANGE EGGS, <br><br> Defendants. | Case No. 1:19-cv-02097 |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...........................................2

ARGUMENT .....................................................................................................4

    A.    The Second Amended Complaint should be dismissed in its entirety
because Plaintiffs have failed to plead any plausible claims ...................................4

        1.    Plaintiffs fail to identify any objective statements on Nellie's
cartons that are untrue ................................................................................4

        2.    The words and images on Defendant's cartons and website are
nonactionable puffery ...............................................................................6

        3.    Plaintiffs have not plausibly alleged that the statements and images
on Defendant's packaging and website were likely to mislead................11

        4.    Plaintiffs have failed to plead a plausible fraud or fraudulent
misrepresentation claim ...........................................................................14

        5.    Plaintiffs have failed to state an actionable express warranty claim. ........16

            a)    Plaintiffs have not identified any material statements of fact
constituting a warranty that they relied upon................................16

            b)    Plaintiffs have not alleged they provided timely or
sufficient notice............................................................................17

        6.    Plaintiffs lack standing to pursue injunctive relief ....................................18

    B.    The claims of Plaintiffs and members of the putative class residing outside
of New York should be dismissed for lack of personal jurisdiction......................19

        1.    This Court lacks general jurisdiction over Defendant ..............................19

        2.    Plaintiffs have not established a basis for asserting specific
jurisdiction over claims brought by non-residents of New York..............20

            a)    The non-resident Plaintiffs have not alleged any basis for
this court to exercise specific jurisdiction over their claims
against Pete and Gerry's .............................................................20

            b)    The claims of putative members of the class residing
outside of New York should be dismissed for lack of
specific jurisdiction......................................................................21

C.      If Plaintiffs want to maintain this action as a nationwide class action, then
        the Court should transfer the case to the District of New Hampshire. ..................23

D.      Discovery should be stayed pending resolution of the motion to dismiss.............25

CONCLUSION.......................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011) ............................................................ 17

*Anderson v. Bungee Intern. Mfg. Corp.*, 44 F.Supp.2d 534 (S.D.N.Y. 1999) ............................. 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 4

*Avnet, Inc. v. American Motorists Ins. Co.*, 115 F.R.D. 588 (S.D.N.Y. 1987) ............................ 25

*Axon v. Citrus World, Inc.*, 354 F.Supp.3d 170 (E.D.N.Y. 2018) ................................................ 12

*Bd.-Tech Elec. Co. v. Eaton Elec. Holdings LLC*, No. 17-CIV-5028 (KBF),
    2017 WL 4990659 (S.D.N.Y. Oct. 31, 2017) .......................................................................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................... 4

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) ....................... 20, 21, 22, 24

*Bumpers v. Cmty. Bank of N. Virginia*, 747 S.E.2d 220 (N.C. 2013) .......................................... 16

*Buonsera v. Honest Co.*, 208 F.Supp.3d 555 (S.D.N.Y. 2016) .................................................... 12

*Cablevision Sys. Corp. v. Verizon New York Inc.*, 119 F. Supp. 3d 39 (E.D.N.Y. 2015) .............. 8

*Caper Corp. v. Wells Fargo Bank, N.A.*, 578 Fed. Appx. 276 (4th Cir. 2014) ............................. 11

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ...................................................... 5

*Chen v. United States*, 854 F.2d 622 (2d Cir. 1988) ..................................................................... 14

*Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007) ................................................. 12

*Colella v. Atkins Nutritionals, Inc.*, 348 F.Supp.3d 120 (E.D.N.Y. 2018) .................................. 17

*Cont'l Cas. Co. v. Hopeman Bros., Inc.*, No. 17-CIV-688, 2018 WL 1581987
    (S.D.N.Y. Mar. 27, 2018) ...................................................................................................... 24

*Corley v. Vance*, 365 F. Supp. 3d 407 (S.D.N.Y. 2019) ............................................................... 19

*DaCorta v. AM Retail Group, Inc.*, No. 16-CIV-01748, 2018 WL 557909
    (S.D.N.Y. Jan. 23, 2018) ....................................................................................................... 18

*DeBernardis v. NBTY, Inc.*, No. 17-CIV-6125, 2018 WL 461228 (N.D. Ill. Jan. 18, 2018) ....... 22

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104 (2d Cir. 2010) ........................................................ 5

*Ellis v. Louisiana-Pac. Corp.,* 699 F.3d 778 (4th Cir. 2012) ........................................................ 11

*F.H. Krear & Co. v. 19 Named Trustees*, 91 F.R.D. 497 (S.D.N.Y. 1981) .................................. 25

*Faber v. Metro. Life Ins. Co.*, 648 F.3d 98 (2d Cir. 2011) ............................................................ 4

*Fialkov v. Microsoft Corp.*, 72 F. Supp. 3d 1220 (W.D. Wash. 2014) ........................................ 7

*Fink v. Time Warner Cable,* 714 F.3d 739 (2d Cir. 2013) ............................................................ 11

*Fink v. Time Warner Cable*, 810 F. Supp. 2d 633 (S.D.N.Y. 2011) ................................... 6, 7, 11

*Freeman v. Time, Inc.,* 68 F.3d 285 (9th Cir.1995) ...................................................................... 11

*Frota v. Prudential-Bache Sec., Inc.,* 639 F. Supp. 1186 (S.D.N.Y. 1986) ................................. 7

*Gale v. Int'l Bus. Mach. Corp.,* 9 A.D.3d 446 (2d Dep't 2004) .................................................. 10

*Glass v. S & M NuTec, LLC*, 456 F. Supp. 2d 498 (S.D.N.Y. 2006) ........................................... 23

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F.Supp.3d 467
    (S.D.N.Y. 2014) ...................................................................................................................... 16

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 58 F.Supp.2d 228 (S.D.N.Y.1999) ............. 15

*Gustavson v. Wrigley Sales Co.,* No. 12-CIV-1861, 2014 WL 60197
    (N.D. Cal. Jan. 7, 2014) .......................................................................................................... 10

*Hamilton v. Mead*, No. 18-CIV-9734, 2019 WL 949009 (S.D.N.Y. Feb. 14, 2019) .................. 24

*Hubbard v. Gen. Motors Corp.,* No. 95-CIV-4362, 1996 WL 274018
    (S.D.N.Y. May 22, 1996) ........................................................................................................ 17

*Ice Bowl v. Spalding Sales Corp.*, 56 Cal.App.2d 918, 133 P.2d 846 (1943) ............................. 17

*Icon Health & Fitness, Inc. v. Nautilus Group, Inc.*, Civ. No. 02-CIV-109, 2004 WL 6031124
    (D. Utah Dec. 21, 2004) ........................................................................................................... 8

*In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711 (E.D. Mo. 2019) .................................... 22

*In re Fla. Citrus Comm'n*, 160 USPQ 495 (TTAB 1968) ............................................................. 5

*In re Scotts EZ Seed Litig.*, No. 12-CIV-4727, 2013 WL 2303727 (S.D.N.Y. May 22, 2013) ...... 9

*In re Trader Joe's Tuna Litig.*, 289 F.Supp.3d 1074 (C.D.Ca. 2017) ........................................... 17

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395 (S.D.N.Y. 2005) ........... 24

*Jessani v. Monini N. Am., Inc.,* 744 Fed.Appx. 18 (2d Cir. 2018)................................................. 12

*Jou v. Kimberly-Clark Corp.*, No. 13-CV-3075, 2013 WL 6491158
    (N.D. Cal. Dec. 10, 2013) ...................................................................................................... 13

*Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) ............................................................ 16

*Leining v. Foster Poultry Farms, Inc.*, No. BC588004, 2018 WL 3089641
    (Cal. Super. Ct. May 25, 2018) ............................................................................................... 6

*Liberty Mut. Ins. Co. v. WAWA Tours, Inc.,* No. 07-CIV-880, 2007 WL 2743500
    (E.D.N.Y. Sept. 18, 2007)....................................................................................................... 14

*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir.1995)............................................................................ 6

*Lynx, Inc. v. Ordnance Prods.*, 273 Md. 1, 327 A.2d 502 (1974) ................................................ 17

*Molock v. Whole Foods Mkt. Group, Inc.*, 317 F. Supp. 3d 1 (D.D.C. 2018) .............................. 22

*Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114 (D.D.C. 2018)...................................... 22

*Mussat v. IQVIA Inc.*, No. 17-CIV-8841, 2018 WL 5311903 (N.D. Ill. Oct. 26, 2018) ............. 22

*Myers-Taylor v. Ornau Foods North America, Inc.*, 18-CIV-1538, 2019 WL 424703
    (S.D. Cal. Feb. 4, 2019) ..................................................................................................... 9, 10

*Nicosia v. Amazon.com, Inc.,* 834 F.3d 220 (2d Cir. 2016)......................................................... 18

*Ong v. Chipotle Mexican Grill, Inc.*, No. 16-CIV-141 (KPF), 2017 WL 933108
    (S.D.N.Y. Mar. 8, 2017) ......................................................................................................... 6

*Pacific Commercial Co. v. Greer*, 129 Cal.App. 751, 19 P.2d 543 (1933) .................................. 17

*Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241 (S.D.N.Y. 2019).......................... 22

*Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013) .............................................. 13

*PETA v. Whole Foods Market California, Inc.*, No. 15-CV-4301, 2006 WL 1642577
    (N.D. Cal. Apr. 26, 2016) ........................................................................................................ 7

*Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489 (5th Cir. 2000)................................... 8

*Placek v. Shopoff*, No. 18-CIV-4326, 2018 WL 4572253 (S.D.N.Y. Sept. 24, 2018) ................ 23

*Quinn v. Walgreen Co.,* 958 F.Supp.2d 533 (S.D.N.Y. 2013)........................................................ 17

*Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43 (D. Mass. 2018) .......................... 21

*Small v. Lorillard Tobacco Co.,* 94 N.Y.2d 43, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999)....... 14

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221 (2d Cir. 2014) ........................... 19

*Spratley v. FCA US LLC*, No. 17-CIV-062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017)....... 21

*Sterling v. Ourisman Chevrolet of Bowie Inc.*, No. 12-CIV-3193, 2015 WL 2213708
    (D. Md. May 8, 2015) ............................................................................................................ 16

*Stuart Silver Assocs., Inc. v. Baco Dev. Corp.,* 245 A.D.2d 96, 665 N.Y.S.2d 415 (1997) ......... 14

*Suarez v. California Nat. Living, Inc.*, No. 17-CIV-9847, 2019 WL 1046662
    (S.D.N.Y. Mar. 5, 2019) ............................................................................................... 18, 22

*Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137 (2006)...................................................... 16

*Tomasino v. Estee Lauder Companies, Inc.,* 44 F.Supp.3d 251 (E.D.N.Y.2014) ........................ 18

*U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12-CIV-6811, 2013 WL 791462
    (S.D.N.Y. Mar. 5, 2013) ................................................................................................... 7, 8

*Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151 (S.D.N.Y. 2014) ...................................... 14, 15

*Weinberger v. Kendrick*, 432 F. Supp. 316 (S.D.N.Y. 1977) ...................................................... 25

*Wenokur v. AXA Equitable Life Ins. Co.*, No. 17-CIV-165, 2017 WL 4357916
    (D. Ariz. Oct. 2, 2017) ......................................................................................................... 22

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) ................................................ 20

*Williamson v. Reinalt-Thomas Corp.*, No. 11-CIV-03548-LHK, 2012 WL 1438812
    (N.D. Cal. Apr. 25, 2012) .................................................................................................... 16

*Workman v. Plum Inc.,* 141 F. Supp. 3d 1032 (N.D. Cal. 2015) ................................................ 13

*Wysong Corp. v. APN, Inc.*, 889 F.3d 267 (6th Cir. 2018) ............................................... 10, 12, 14

**Statutes**

15 U.S.C. § 1054 ............................................................................................................. 5

15 U.S.C. §§ 1054, 1127 ................................................................................................. 5

28 U.S.C. § 1404(a) ....................................................................................................... 23

N.Y. U.C.C. § 2-607(3)(a) ............................................................................................ 17

**Other Authorities**

https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2018/12/311. 24

**Rules**

Rule 12(b)(6) ............................................................................................................... 4, 5

Rule 26(c) ...................................................................................................................... 25

**Treatises**

Newberg on Class Actions § 6:26 (2018 update) ......................................................... 21

## INTRODUCTION

As People for the Ethical Treatment of Animals ("PETA") – the real force behind this action – made clear in its solicitation to additional class representatives, this "historic lawsuit" is more press release than substance, and part of  PETA's ongoing  quest to eliminate the consumption of animal products from the American diet:

> When animals are used by a business for profit, they always suffer.  The best way to help chickens is to stop eating their eggs and flesh.

Ex. A.   Defendant Pete and Gerry's[1] poses a threat to PETA's agenda because it has shown that a company can produce eggs on a commercial scale in a more humane manner than the egg-farm factories that sell 90% of the eggs consumed in the United States.  This lawsuit seeks to counter Pete and Gerry's success by alleging that it has "duped" and "lie[d]" to its customers regarding Pete and Gerry's animal welfare practices.  But the Second Amended Complaint fails to identify any objective, untrue statements that could support Plaintiffs' claims.

It is undisputed that each package of Nellie's eggs displays the Certified Humane® seal. This designation confirms Defendant's compliance with the Humane Farm Animal Care standards for egg-laying hens, which prescribe requirements for, among other things, outdoor access, barn floor space, and beak trimming.  There are no allegations that Defendant ever failed to comply with these standards or that its use of the Certified Humane® seal is in any way deceptive.

Instead, Plaintiffs claim that when Defendant declares that "WE LOVE OUR HENS," that its hens lead "BETTER LIVES," and that the company sells "A KINDER KIND OF EGG"

---

[1] Pete and Gerry's has provided Plaintiffs with documented confirmation that "Nellie's Free Range Eggs" is a registered trademark of Pete and Gerry's Organics, LLC and is not a separate legal entity and therefore any claims against "Nellie's" should be dismissed.  Plaintiffs, however, persist in naming Nellie's as a defendant.  This motion is therefore filed on behalf of both "Defendants," but this memo will refer only to "Pete and Gerry's" or "Defendant."

and displays pictures of chickens hugged by children in beautiful grassy surroundings, it is making false factual claims that are actionable as consumer fraud. Plaintiffs contend that a company that "loved" hens would not engage in certain practices that Plaintiffs disapprove of. The problem here is straightforward, and warrants dismissal at the pleading stage: reasonable consumers would view these statements for what they are – subjective claims about a product that cannot be proven either true or false. This puffery is nonactionable. Because all Plaintiffs' claims suffer from this fundamental problem, the Defendant's motion to dismiss should be granted.

In the event that the Court does not dismiss the Second Amended Complaint in its entirety, the Court should dismiss the claims brought by Plaintiffs that do not reside in New York, along with the claims of non-New York putative class members they purport to represent, as this Court lacks personal jurisdiction over these claims against Defendant.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are residents of New York, North Carolina, Maryland, Georgia, Massachusetts, and California who seek to bring this putative class action against Pete and Gerry's Organics, LLC and Nellie's Free Range Eggs on behalf of a nationwide class of consumers who purchased Nellie's eggs in the last three years. Second Amended Complaint ("SAC") ¶¶ 18-24, 119. Plaintiffs contend they were deceived into believing they were "purchasing eggs sourced from small farms providing all chickens with space to move around both indoors and outdoors, as well as freedom from chick culling, beak cutting, calcium depletion, and sale to commercial slaughterhouses and live markets" by a combination of "slogans, descriptions, and images" on the packaging of Nellie's eggs. *See, e.g.,* SAC ¶ 17. The Second Amended Complaint identifies eight "cheerful slogans and representations of animal care" on Defendant's cartons:

- "WE LOVE OUR HENS, YOU'LL LOVE OUR EGGS"

2

- "WE LOVE OUR HENS"

- "THEY ROAM WHERE THEY PLEASE"

- "BETTER LIVES FOR HENS MEAN BETTER EGGS FOR YOU"

- "THE GRASS IS GREENER WHEN THERE IS ACTUALLY GRASS"

- "A KINDER KIND OF EGG"

- "BLUE SKY ABOVE, GREEN GRASS BELOW. JUST LIVIN' THE DREAM."

- "OUTDOOR FORAGE"

SAC ¶ 43.

Plaintiffs claim that, contrary to the idyllic scenes and statements on Defendant's packaging and website, Defendant "crams and stuffs hens… into sheds up to 20,000 at a time," which "prevents them from extending their wings, foraging or making their way to the outdoor space Nellie's advertises so prominently." *Id.* at ¶ 7. Plaintiffs also complain that "Nellie's condones the systematic mutilation of laying hens' beaks," and "[a]fter only thirteen months… sells them to slaughterhouses and live markets that kill them…" *Id.* at ¶ 8. Plaintiffs assert that "had they known the truth" they "would not have paid premium prices for Nellie's eggs," and they "would only consider purchasing Nellie's eggs in the future if Defendants were to treat chickens in a manner consistent with their advertising." *See, e.g., id.* at ¶¶ 16, 17.

None of the non-New York Plaintiffs (Alvarado, Modi, Gray, Sewell, and Romano) allege they purchased Nellie's eggs in New York. *See id.* at ¶¶ 19-23. Nor do any of the non-New York Plaintiffs allege they were exposed to any marketing or advertising of Nellie's eggs in New York. *Id.* Plaintiffs allege that "Defendants are residents of and incorporated in New

Hampshire." *Id.* at ¶ 12.  Plaintiffs do not contend that Pete and Gerry's has a principal place of business in New York or is otherwise subject to general jurisdiction in New York.  *Id.*

Plaintiffs originally filed this action on March 6, 2019.  [Doc. 1].  Prior to Defendant filing a response, Plaintiffs filed an Amended Complaint on May 7, 2019.  [Doc. 10].  On May 20, 2019, Defendant filed a letter requesting a pre-motion conference on its proposed motion to dismiss.  [Doc. 18].  On June 27, 2019, the Court held a pre-motion conference with the parties. At the conference, the Court granted Plaintiffs leave to file a further amended complaint and Defendant leave to file a motion to dismiss the amended pleading without the need for a further conference.  On July 29, 2019, Plaintiffs filed their Second Amended Complaint.  [Doc. 29].

## ARGUMENT

**A. The Second Amended Complaint should be dismissed in its entirety because Plaintiffs have failed to plead any plausible claims.**

Whether the alleged wrongdoing is framed as deceptive acts, false advertising, fraud, or breach of warranty, Plaintiffs fail to allege a plausible claim for relief.  Even though a district court considering a Rule 12(b)(6) must "draw all reasonable inferences in [the plaintiff's] favor, [and] assume all well-pleaded factual allegations to be true," *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted), *Twombly* and *Iqbal* require the court to ultimately determine whether the complaint has "state[d] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The allegations contained in the Second Amended Complaint fail to do so.

**1. Plaintiffs fail to identify any objective statements on Nellie's cartons that are untrue.**

Plaintiffs' claims fail at the outset because they do not identify any objective statements on Defendant's packaging that are untrue.  Each package identified by Plaintiffs in the Second

Amended Complaint includes the following objective statements: "12 eggs," "Grade A," "no added hormones," "no antibiotics," and "Certified Humane Raised & Handled." SAC ¶ 46. Plaintiffs do not contend – nor could they – that any of these statements are false or untrue.

In their description of the packaging, Plaintiffs fail to address one important and undisputed fact: Nellie's eggs are a Certified Humane® product.[2] *See* SAC ¶ 46. As explained on the company's website,[3] "Certified Humane is a program run by the nonprofit Humane Farm Animal Care (HFAC) organization whose mission is to improve the lives of farm animals. The Certified Humane on our package ensures that all our free range farms meet HFAC's rigorous standards of care and pass their annual farm audit."[4] Ex. B. Plaintiffs do not allege that Defendant fails to adhere to the Certified Humane® standards, nor do they challenge the

---

[2] Registered Trademark of Humane Farm Animal Care, a not for profit organization, with the U.S. Patent and Trademark Office, Serial No. 78645262 and image:



[3] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). The Second Amended Complaint extensively references and reproduces material from Defendant's website. *See* SAC ¶¶ 50-67. The Court may therefore consider the website in ruling on this motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (where a complaint "relies heavily upon" and document that is "integral to the complaint" the court may consider it in ruling on a motion to dismiss.) (quotation marks omitted).

[4] The Certified Humane mark is a certification mark. *See* 15 U.S.C. § 1054. A certification mark "is a special creature created for a purpose uniquely different from that of an ordinary service mark or trademark . . . ." *In re Fla. Citrus Comm'n*, 160 USPQ 495, 499 (TTAB 1968). Two characteristics differentiate certification marks from trademarks or service marks: first, a certification mark is not used by its owner but rather by authorized users and, second, a certification mark does not indicate commercial source or distinguish the goods or services of one person from those of another person but rather indicates that the goods/services of authorized users are certified as to a particular aspect of the goods/services. *See* 15 U.S.C. §§ 1054, 1127.

substance of the standards, which address the care standards and practices that Plaintiffs say they are concerned about (e.g. outdoor access, barn space, beak trimming).[5]

### 2. The words and images on Defendant's cartons and website are nonactionable puffery.

Instead of challenging the objective statements made on Defendant's cartons, Plaintiffs choose to challenge a variety of subjective words and images on the packaging of Nellie's eggs and on Defendant's website. But a reasonable consumer would not take these words and the accompanying images as concrete representations about the actual lives Defendant's hens lead. Even viewed in the light most favorable to Plaintiffs, they are nonactionable puffery.

"Puffery includes generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely." *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011), *on reconsideration*, 2011 WL 5121068 (S.D.N.Y. Oct. 28, 2011). "Regarding puffery, the Second Circuit has stated that '[s]ubjective claims about products, which cannot be proven either true or false, are not actionable.'" *Id.* (quoting *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir.1995)); *Cf. Ong v. Chipotle Mexican Grill, Inc.*, No. 16-CIV-141 (KPF), 2017 WL 933108, at *12 (S.D.N.Y. Mar. 8, 2017) (finding generalized statements regarding food-safety programs and protocols to be nonactionable puffery). The statements identified by Plaintiffs exactly fit this description.

The statement "WE LOVE OUR HENS, YOU'LL LOVE OUR EGGS" is the quintessential example of a generalized statement that a reasonable consumer would not interpret

---

[5] Plaintiffs' failure to address the Certified Humane® logo is likely the result of another court rejecting a similar effort by an animal rights group to attack a similar humane certification mark. *See Leining v. Foster Poultry Farms, Inc.*, No. BC588004, 2018 WL 3089641 (Cal. Super. Ct. May 25, 2018) (dismissing consumer's claim that packaging containing certification from American Humane Association was misleading because it incorrectly implied the chickens received humane treatment); *Cf. Bd.-Tech Elec. Co. v. Eaton Elec. Holdings LLC*, No. 17-CIV-5028 (KBF), 2017 WL 4990659, at *7 (S.D.N.Y. Oct. 31, 2017), aff'd sub nom. 737 F. App'x 556 (2d Cir. 2018) (dismissing claim that use of Underwriters Laboratories certification mark was misleading or false advertising).

as a factual claim to be relied upon. *See Fialkov v. Microsoft Corp.*, 72 F. Supp. 3d 1220, 1231 (W.D. Wash. 2014) ("[S]tatement that 'customers love [Microsoft's] Surface [tablet]'" was "vague and amorphous" and thus "mere puffery, which is . . . not actionable as a matter of law."). The concept of a business entity "loving" chickens is at best a "subjective claim[] . . . which cannot be proven either true or false," and is therefore not actionable. *Fink*, 810 F. Supp. 2d at 644. The statement is puffery because it is "subject to varying interpretations depending upon varying standards different persons" use to decide what "love" means in the context of a commercial egg business. *U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12-CIV-6811, 2013 WL 791462, at *6 (S.D.N.Y. Mar. 5, 2013) (quotation marks omitted); *see also Frota v. Prudential-Bache Sec., Inc.*, 639 F. Supp. 1186, 1190 (S.D.N.Y. 1986) (statement that broker was a "friend" and "confidant" who plaintiffs "could trust" was "nothing more than the common puff of a salesman, and not actionable . . . .") (quotation marks omitted); *PETA v. Whole Foods Market California, Inc.*, No. 15-CV-4301, 2006 WL 1642577, at *3 (N.D. Cal. Apr. 26, 2016) (statements "Raised Right Tastes Right" and "Great-Tasking Meat From Healthy Animals" were "unspecific and unmeasurable, and therefore constitute puffery").

"Love," as we have all heard, "is what makes a Subaru, a Subaru," but that statement does not provide a concrete representation to a consumer about what goes into the manufacturing or maintenance of a Subaru vehicle. Similarly, the statement "WE LOVE OUR HENS" does not provide a concrete representation to consumers as to Defendant's animal welfare practices that could take this generalized sales pitch beyond mere puffery. *See Fink*, 810 F. Supp. 2d at 644.

The same is true of the statements BETTER LIVES FOR HENS MEAN BETTER EGGS FOR YOU!" and "[m]ost hens don't have it as good as Nellie's." SAC ¶¶ 16-17. The claim

that the lives of Defendant's hens are "better" than the lives of other hens cannot be proven true or false, as any such conclusion would be no more than a subjective interpretation. *See Cablevision Sys. Corp. v. Verizon New York Inc.*, 119 F. Supp. 3d 39, 53 (E.D.N.Y. 2015) ("That the meaning of 'better' can be questioned not only undermines any claim of falsity, but renders this language inactionable puffery."); *Icon Health & Fitness, Inc. v. Nautilus Group, Inc.*, Civ. No. 02-CIV-109, 2004 WL 6031124, at *23 (D. Utah Dec. 21, 2004) ("The use of the word 'better' indicates a subjective statement—a statement of opinion—that cannot be measured and is not fact."); *see also Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 490 (5th Cir. 2000) (Papa John's slogan "Better Ingredients.  Better pizza." did not constitute "objective statement of fact upon which consumers would be justified in relying").  The statement that Nellie's hens lead "better lives," or that other hens "don't have it as good," is nonactionable puffery.

The same analysis applies to the statement that Defendant's hens are "JUST LIVIN' THE DREAM"—a statement that has no tangible or objective meaning.  Nor do Plaintiffs gain any traction with their assertion that they were duped or misled by "A KINDER KIND OF EGG," yet another example of an obviously subjective claim that cannot be proven true or false, but is instead "subject to varying interpretations depending upon varying standards different persons use." *U.S. Bank*, 2013 WL 791462, at *6.

As for "THE GRASS IS GREENER WHEN THERE IS ACTUALLY GRASS," this statement is, for one thing, accurate: one would indeed expect actual grass to be greener than non-existent grass.  It is also, for the same reason, a tautology.  As such, it is unclear how or why a consumer would rely on the statement "THE GRASS IS GREENER WHEN THERE IS ACTUALLY GRASS" as a reason for purchasing eggs.  Plaintiffs appear to interpret the

statement as a representation about the abundance and quality of the grass in the lives of Defendant's hens, but the statement does not make a specific or measurable representation.

The same goes for "BLUE SKY ABOVE, GREEN GRASS BELOW."  Plaintiffs appear to take this as a statement that all or most or some (again, it is subjective) of  Defendant's hens are  outside in the grass on sunny days.  But once again they cannot identify a quantifiable representation about the amount of time spent outside in the grass that could be proven true or false, or plausibly allege that a reasonable consumer would understand "BLUE SKY ABOVE, GREEN GRASS BELOW" as a factual claim about specific characteristics of Nellie's eggs.  *See In re Scotts EZ Seed Litig*., No. 12-CIV-4727, 2013 WL 2303727, at *7 (S.D.N.Y. May 22, 2013) (finding that representations that "EZ Seed is 'WaterSmart'; 'Drought tolerant'; 'Grows Anywhere! Guaranteed!'; 'Makes the Most Of Every Drop'; and 'Grows in Tough Conditions! Guaranteed!'" were so general and vague that they constituted non-actionable puffery.).  This analysis also applies to the statements that Nellie's hens "can peck, perch, and play on plenty of green grass," and the unelaborated words "OUTDOOR FORAGE."  Neither of these statements is a concrete quantifiable representation that could be proven true or false.

The packaging and statements that Plaintiffs rely upon in this case are similar to what the court rejected as the basis for a misrepresentation claim in *Myers-Taylor v. Ornau Foods North America, Inc*., 18-CIV-1538, 2019 WL 424703 (S.D. Cal. Feb. 4, 2019).  The defendant in *Myers-Taylor* marketed butter as having been made with "Milk From Grass-Fed Cows."  *Id*. at *1.  In granting the defendant's motion to dismiss, the court first held that the statement "Milk From Grass-Fed Cows" would not have led a reasonable consumer to believe that the cows in question were *100%* grass-fed.  *See id*. at *4.  The Court then described packaging that bears striking similarities to the Defendant's packaging here at issue:

9

> in his complaint, Plaintiff provides images from the [defendant] depicting cows
> eating grass, on which [the defendant] states that . . . "the grass really is greener
> over here," and "our happy grass-fed cows[.]" Plaintiff alleges that these are
> "intended to convey to the Plaintiff and other similarly situated consumers the
> false impression that the Kerrygold Products are derived from cows that are 100%
> grass fed."

*Id*. at *5.

Similarly, the Plaintiffs in this matter allege that images of chickens in grassy fields, combined with statements that echo those in *Myers-Taylor*—"the grass really is greener over here" and "our happy grass-fed cows"—are intended to convey this is how Defendant's hens spend all of their time. The *Myers-Taylor* court rejected those arguments, explaining that the "images are non-actionable puffery" that did not make "specific claims" that a reasonable consumer would rely on. *Id.* Here too, Plaintiffs could not have reasonably taken the pictures and words on Defendant's packaging to mean that its hens are always "livin' the dream" as depicted in the pictures. If Plaintiffs believed that a company they allege generates millions of dollars in annual revenue provides each hen with a little girl or boy to care for it every day in a large open sunny field, that belief was neither plausible nor reasonable. *See Wysong Corp. v. APN, Inc*., 889 F.3d 267, 272 (6th Cir. 2018) ("Common sense dictates that reasonable consumers are unlikely to expect that dog food is made from the same meat that people eat.").

Although none of the Plaintiffs allege they relied upon any statements or images on the website before making purchases, *see* SAC ¶¶ 16-24,[6] the Second Amended Complaint cites a variety of statements from Defendant's website that they claim are deceptive, including:

---

[6] Given that none of the Plaintiffs allege reliance on statements or images from Defendant's website, the Court should dismiss the Plaintiffs' claims insofar as they are based on statements and images from the Defendant's website. *See Gale v. Int'l Bus. Mach. Corp.,* 9 A.D.3d 446, 447 (2d Dep't 2004) ("If the plaintiff did not see any of these statements, they could not have been the cause of the injury, there being no connection between the deceptive act and the plaintiff's injury."); *Gustavson v. Wrigley Sales Co.,* No. 12-CIV-1861, 2014 WL 60197, at *9 (N.D. (footnote continued)

- Hens "enjoy the sunshine and the green grass," "just love being outside in the grass," and "love being able to roost and socialize out in the sunshine." SAC ¶ 51

- "Our happy hens are free to roam and strut throughout their wide open pasture" and "live as free as a bird all day long." *Id* ¶ 56.

- Defendant's hens are "among the happiest hens on earth" and "love spending their days in sunshine" *Id* ¶ 58.

- Defendant's hens have "freedom to move about" and "live in a healthy, happy environment" *Id*. ¶ 60.

- Defendant's hens are treated "like . . . any friend, with love and gratitude" *Id*. ¶ 62.

- Defendant's hens have "plenty of space to perch and socialize" and "easy access to the outdoors with real grass to peck, play and dust bathe." *Id*. ¶ 64.

- Defendant's hens enjoy a "STRESS FREE ENVIRONMENT." *Id*. ¶ 65.

As the repetition of words like "love" and "happy" to describe the subjective experience of chickens should make clear, these are not "factual claim[s]," but instead "[s]ubjective claims . . . which cannot be proven either true or false . . . ." *Fink*, 810 F. Supp.2d at 644. As such they are non-actionable puffery, just like the challenged statements on the packaging of Nellie's eggs.

### 3. Plaintiffs have not plausibly alleged that the statements and images on Defendant's packaging and website were likely to mislead.

Even if the Court concludes that some of the statements and images on Defendant's packaging and website are not "puffery," Plaintiffs have still not plausibly alleged a claim under the various state statutes identified in Counts I-VIII.  To prevail on their statutory claims, Plaintiffs must establish that the allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances. *See, e.g., Fink v. Time Warner Cable,* 714 F.3d 739, 741 (2d Cir. 2013); *Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th

---

Cal. Jan. 7, 2014) (holding plaintiff lacked standing to pursue "claims based on statements appearing on a Wrigley website that [plaintiff] does not claim to have viewed").

Cir.1995); *Caper Corp. v. Wells Fargo Bank, N.A.*, 578 Fed. Appx. 276, 287 (4th Cir. 2014). It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer. *See Freeman,* 68 F.3d at 289; *Fink*, 714 F.3d at 741; *see also Ellis v. Louisiana-Pac. Corp.,* 699 F.3d 778, 787 (4th Cir. 2012) (determining "whether conduct is 'unfair' or 'deceptive' is a legal issue for the court to decide" under the North Carolina Unfair and Deceptive Practices Act).

The Second Amended Complaint fails to allege that "a significant portion of the general consuming public" had expectations similar to those Plaintiffs allege based on the Nellie's packaging. At best, Plaintiffs have vaguely alleged that the "impression" created by the packaging conveyed that Nellie's eggs were sourced from "small farms" or "family farms." But they fail to allege what the general consuming public would expect that to mean. And Plaintiffs fail to allege that a reasonable consumer looking at the packaging and seeing professions of "love" for hens would have any particular thoughts regarding Defendant's specific animal welfare practices. *See Wysong*, 889 F.3d at 272 (dismissing false advertising claim where the complaint "did not explain *how* the photographs are supposed to have misled consumers in light of the whole context of the challenged advertisements.") (emphasis in original).

"[P]laintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.' Plaintiffs must plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Jessani v. Monini N. Am., Inc.,* 744 Fed.Appx. 18, 19 (2d Cir. 2018) (summary order) (internal citations omitted). This is an objective inquiry. *Cohen v. JP Morgan Chase & Co.,* 498 F.3d 111, 126 (2d Cir. 2007).

While some district courts have held that it may not be appropriate to resolve the question of what might deceive a reasonable consumer on a motion to dismiss, *see, e.g., Buonsera v. Honest Co.*, 208 F.Supp.3d 555, 567 (S.D.N.Y. 2016), "dismissal is appropriate when the complaint fails to allege facts that state a plausible claim for relief." *Axon v. Citrus World, Inc.*, 354 F.Supp.3d 170, 183 (E.D.N.Y. 2018); *see also, e.g.*, *Workman v. Plum Inc.,* 141 F. Supp. 3d 1032, 1035–37 (N.D. Cal. 2015) (dismissing claims   alleging misleading depiction of food groups on bars and puree pouches); *Jou v. Kimberly-Clark Corp.*, No. 13-CV-3075, 2013 WL 6491158, at *10 (N.D. Cal. Dec. 10, 2013) (dismissing claim to the extent that the plaintiff claimed that diapers labeled "Soft Organic Cotton" would likely mislead a reasonable consumer into believing the diapers were made exclusively of that material); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (dismissing claim that pasta products marketed as "all natural" was misleading).

In  cases where district courts have dismissed claims at the motion to dismiss stage, the common theme has been an unsupported leap of logic from a representation made on packaging to the consumer's expectations with respect to the product.  Plaintiffs' Second Amended Complaint suffers from the same unsupported leaps of logic –- Plaintiffs contend that they had certain expectations with respect to the care and treatment of Defendant's hens that are not grounded in any of the statements or pictures on the packaging.

As set forth above, Plaintiffs identify eight "cheerful slogans and representations of animal care" on Nellie's packaging.  SAC ¶ 43.  They contend that these phrases created the "impression" that they were purchasing eggs "from loving family farms that offered chickens freedom from chick culling, beak-cutting, calcium depletion and sale to commercial slaughterhouses and live markets."  *See, e.g.*, SAC ¶ 17.  But they fail to show how these vague,

subjective statements would lead a reasonable consumer to be misled about specific animal welfare practices (e.g. beak trimming, chick culling, and slaughterhouse sales). *See, generally,* SAC ¶¶ 70-118. This leap of logic is unreasonable and does not state a plausible claim.

The most glaring example of this unreasonable leap of logic are the allegations made by Plaintiff Minoee Modi. She asserts that Defendant's profession of "love" and "better lives" for hens on its packaging "led [her] to believe Nellie's was making a higher promise than just 'cage free' or 'free range,'" and that "she had found an egg seller that treated chickens like companion animals in a family." SAC ¶ 20. There is no explanation provided in the Second Amended Complaint as to why a reasonable consumer would draw such a conclusion. Nor does the Second Amended Complaint point to where this purported "higher promise" is made. Under any objective assessment, it is simply not plausible that a reasonable consumer would believe that a company selling millions of eggs each year would be treating each laying hen like the family dog. *See Wysong*, 889 F.3d at 271–72 (finding it implausible "that reasonable consumers believe most of the (cheap) dog food they encounter in the pet-food aisle is in fact made of the same sumptuous (and more costly) ingredients they find a few aisles over in the people-food sections.").

### 4. Plaintiffs have failed to plead a plausible fraud or fraudulent misrepresentation claim.

While the Second Amended Complaint contains additional allegations pertaining to Plaintiffs' fraud and fraudulent misrepresentation claims (Counts IX and X), it does not cure the failure to plead a plausible fraud claim against Defendant.[7] To state a cause of action for fraud,

---

[7] While Plaintiffs purport to assert separate claims for "fraud" and "fraudulent misrepresentation," a claim for "fraudulent misrepresentation" or "intentional misrepresentation" is the equivalent of a fraud cause of action under New York law. *Liberty Mut. Ins. Co. v. WAWA Tours, Inc.*, No. 07-CIV-880, 2007 WL 2743500, at *6 n.10 (E.D.N.Y. Sept. 18, 2007) (citing *Chen v. United States*, 854 F.2d 622, 628 (2d Cir. 1988)).

"the complaint must contain allegations of a representation of material fact, falsity, scienter, reliance and injury." *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 165 (S.D.N.Y. 2014) (quoting *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 698 N.Y.S.2d 615, 720 N.E.2d 892, 898 (1999)). Moreover, as an element of the claim, "[the] Plaintiff must show [that the] reliance was reasonable." *Id.* (quoting *Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*, 245 A.D.2d 96, 665 N.Y.S.2d 415, 417 (1997)).

The Second Amended Complaint fails at the outset because Plaintiffs do not identify any false representations of material fact by Defendant.  Plaintiffs allege generally that the "portrayal of chickens on cartons of Nellie's eggs as leading loved, happy, healthy, and low-stress lives on small farms in which they can freely roam was, and continues to be, false and misleading." *See, e.g.*, SAC ¶¶ 190, 197.  But they do not allege any specific material fact that Defendant misrepresented.

To the extent that Plaintiffs identify any specific statements made by Defendant, they point to the same vague, subjective statements that are not statements of material fact.  *See, e.g.*, SAC ¶ 16 (claiming that Plaintiffs Michelle Lugones and Marcus Seizing "relied on a combination of slogans, descriptions, and images" and identifying "WE LOVE OUR HENS, YOU'LL LOVE OUR EGGS" and "[m]ost hens don't have it as good as Nellie's" as examples). These statements are insufficient to meet Plaintiffs' pleading obligations.

If Defendant's professions of "love" or claims that their hens have it "better" than other hens can be considered statements of material fact, Plaintiffs have failed to plead reasonable reliance on those statements.  "[W]hether a plaintiff has adequately pleaded justifiable reliance can be a proper subject for a motion to dismiss." *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 58 F.Supp.2d 228, 259 (S.D.N.Y.1999).  In conducting this analysis under New York law, a

court must consider "the degree to which the truth was accessible" and the extent to which the plaintiff exercised "minimal diligence or care" to "negate its own recklessness." *Ward*, 3 F. Supp. 3d at 165 (citations omitted).

As set forth above in Section A.2, it was unreasonable for Plaintiffs to conclude, based on Defendant's professions of "love," that they were purchasing eggs from "loving family farms that offered chickens freedom from chick culling, beak-cutting, calcium depletion and sale to commercial slaughterhouses and live markets." *See, e.g.,* SAC ¶ 17.  Plaintiffs' alleged reliance on these statements as the basis for drawing conclusions about Defendant's specific animal welfare practices was unreasonable, particularly where Plaintiffs have not alleged they exercised "minimal diligence or care" to ascertain the truth.[8]

### 5.  Plaintiffs have failed to state an actionable express warranty claim.

Plaintiffs' breach of warranty claim (SAC ¶¶ 203-208) should be dismissed because Plaintiffs fail to allege the existence of material statements of fact that they relied upon and have failed to allege that they provided timely and sufficient notice of the alleged breach of warranty.

### a)  Plaintiffs have not identified any material statements of fact constituting a warranty that they relied upon.

---

[8]  Several of the state consumer statutes also require a showing of reasonable reliance to plausibly state a claim including the North Carolina Unfair and Deceptive Practices Act, Maryland Consumer Protection Act, Georgia Fair Business Act, and California's Unfair Competition Law and False Advertising Law.  *See, e.g., Bumpers v. Cmty. Bank of N. Virginia*, 747 S.E.2d 220, 226 (N.C. 2013) (claims under the NCUDTPA "stemming from an alleged misrepresentation... require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause."); *Sterling v. Ourisman Chevrolet of Bowie Inc.*, No. 12-CIV-3193, 2015 WL 2213708 (D. Md. May 8, 2015) (private party must show reliance to establish MCPA claim); *Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137, 141 (2006) (plaintiff required to show not only reasonable reliance to support a FBPA claim, but also that she "exercised due diligence to ascertain the falsity of the statement"); *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1095 (9th Cir. 2017) (recognizing "actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong"); *Williamson v. Reinalt-Thomas Corp.*, No. 11-CIV-03548-LHK, 2012 WL 1438812, at *9 (N.D. Cal. Apr. 25, 2012) (dismissing FAL claim where Plaintiff did not plausibly establish that he actually relied upon Defendants' fraudulent omission).  As an alternative basis, the Court may dismiss Counts III, IV, V, VI, VIII for failing to plausibly establish reasonable reliance for the reasons set forth in Section A.4.

"To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F.Supp.3d 467, 482 (S.D.N.Y. 2014). "[A] plaintiff complaining of breach of express warranty must 'set forth the terms of the warranty upon which he relied.'" *Id.*

As explained above, the labeling on Defendants' egg cartons does not constitute a material statement of fact amounting to a warranty; the statements are non-actionable puffery. *See, e.g., Anderson v. Bungee Intern. Mfg. Corp.*, 44 F.Supp.2d 534, 541 (S.D.N.Y. 1999) (dismissing express warranty claim based on puffery) ); *Hubbard v. Gen. Motors Corp.,* No. 95-CIV-4362, 1996 WL 274018, at *7 (S.D.N.Y. May 22, 1996) (dismissing express warranty claim where the complained-of statements were "generalized and exaggerated claims, which a reasonable consumer could not rely upon as statements of fact.").

**b)  Plaintiffs have not alleged they provided timely or sufficient notice.**

To assert an express warranty claim, New York law requires that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ." *See, e.g.,* N.Y. U.C.C. § 2-607(3)(a). Courts may dismiss an express warranty if the plaintiff fails to adequately plead sufficient and timely notice to the seller.[9] *See, e.g., Quinn v. Walgreen Co.,* 958 F.Supp.2d 533, 544 (S.D.N.Y. 2013)

---

[9] Plaintiffs have not specifically alleged what state law should apply to the common law claims of the putative class. If Plaintiffs allege that some state law other than New York applies to its warranty claims, then Defendants may have additional defenses. For example, the failure to provide notice prior to filing a lawsuit is a complete bar to an express warranty action under California and Maryland law. *See, e.g., Alvarez v. Chevron Corp.*, 656 F.3d 925. 932 (9th Cir. 2011); *Lynx, Inc. v. Ordnance Prods.*, 273 Md. 1, 327 A.2d 502, 514 (1974). California courts have also determined that notice on the order of months or a year after purchase is untimely as a matter of law. *See., e.g, In re Trader Joe's Tuna Litig.*, 289 F.Supp.3d 1074, 1093 (C.D.Ca. 2017) (notice given "a year and two years" after plaintiffs stopped purchasing goods unreasonable as a matter of law); *Ice Bowl v. Spalding Sales Corp.*, 56 (footnote continued)

(dismissing warranty claims where plaintiffs failed to allege they provided timely notice); *see also Colella v. Atkins Nutritionals, Inc.*, 348 F.Supp.3d 120 (E.D.N.Y. 2018) (dismissing warranty claim where complaint lacked allegations that notice was timely provided to defendant).

Plaintiffs have not alleged that they provided timely or sufficient notice of any breach of warranty to Defendant.  Indeed, the Second Amended Complaint is silent on the subject of notice.  *See* SAC ¶¶ 204-208.  Given Plaintiffs' failure to plead timely notice, dismissal is required.

**6.  Plaintiffs lack standing to pursue injunctive relief.**

It is well established that "[a] plaintiff who concedes she is no longer likely to purchase a product because she knows of a defendant's alleged deception and false advertising lacks standing to enjoin the defendant's sales practices."  *Suarez v. California Nat. Living, Inc.*, No. 17-CIV-9847, 2019 WL 1046662, at *4 (S.D.N.Y. Mar. 5, 2019).  "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citation omitted); *see also DaCorta v. AM Retail Group, Inc.*, No. 16-CIV-01748, 2018 WL 557909, at *4 (S.D.N.Y. Jan. 23, 2018) ("[A] party cannot rely on past injury to provide a basis for standing to seek injunctive relief.").  A plaintiff may not rely upon "the fact that unknowing class members might purchase" the products in the future to establish standing.  *Tomasino v. Estee Lauder Companies, Inc.,* 44 F.Supp.3d 251, 256 (E.D.N.Y.2014).

Cal.App.2d 918, 921-22, 133 P.2d 846 (1943) (holding notice untimely as a matter of law when given four months after the purchase of defective skates); *Pacific Commercial Co. v. Greer*, 129 Cal.App. 751, 19 P.2d 543 (1933) (notice of rejection of goods 7 months after discovery of defect was held not to be within a reasonable time).

Plaintiffs allege that if they had known then what they know now, they would not have purchased Nellie's eggs. *See* SAC ¶¶ 16-24. Plaintiffs are now aware of the aspects of Defendant's business that displease them, and do not intend to purchase Nellie's eggs in the future. *See, e.g.,* SAC ¶ 16 ("Michelle and Marcus would only consider purchasing Nellie's eggs in the future if Defendants were to treat chickens in a manner consistent with their advertising."). Plaintiffs therefore do not have standing to seek prospective injunctive relief against Defendants.

## B. <u>The claims of Plaintiffs and members of the putative class residing outside of New York should be dismissed for lack of personal jurisdiction.</u>

If the Second Amended Complaint is not dismissed in its entirety, the Court should nonetheless dismiss the claims brought by the non-resident Plaintiffs and non-resident members of the putative class for lack of personal jurisdiction. Plaintiffs have failed to allege a basis for asserting personal jurisdiction over Defendant in New York for the claims of consumers that purchased Nellie's eggs outside of New York.

### 1. This Court lacks general jurisdiction over Defendant.

Plaintiffs have not alleged, nor could they establish, that this Court has general jurisdiction over Defendant Pete and Gerry's. The paradigm forum for general jurisdiction over a corporation is "the place of incorporation and the principal place of business." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014); *Corley v. Vance*, 365 F. Supp. 3d 407, 433 (S.D.N.Y. 2019) (general jurisdiction exists where "a corporation's affiliations with the State'" are "so continuous and systematic as to render [it] essentially at home in the forum State.") (quotation marks omitted). Plaintiffs allege that Pete & Gerry's is incorporated and headquartered in New Hampshire. *See* SAC ¶¶ 12, 25. Pete and Gerry's is therefore "at home"

in New Hampshire and subject to general jurisdiction there.   It is not "at home" in New York, and thus is not subject to general jurisdiction in New York.  *See Corley*, 365 F. Supp. 3d at 433.

## 2. Plaintiffs have not established a basis for asserting specific jurisdiction over claims brought by non-residents of New York.

Having failed to allege the existence of general jurisdiction over Pete and Gerry's, Plaintiffs have the burden of showing some basis for this Court to assert specific jurisdiction over the claims made by non-residents of New York.  The Second Amended Complaint, however, provides no plausible allegations that would justify this Court asserting specific jurisdiction over Pete and Gerry's for actions and conduct unrelated to New York.

### a) The non-resident Plaintiffs have not alleged any basis for this court to exercise specific jurisdiction over their claims against Pete and Gerry's.

Plaintiffs Alvarado, Modi, Gray, Sewell, and Romano have not alleged any basis for this Court to exercise specific jurisdiction over their claims against Pete and Gerry's because the complained-of transactions and conduct took place outside of New York.  The Supreme Court has established "three conditions for the exercise of specific jurisdiction over a nonresident defendant."  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1785 (2017).  "First, the defendant must have purposefully avail[ed] itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State."  *Id.* (quotation marks omitted).  "Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct."  *Id.* at 1786 (quotation marks omitted).  "Finally, the exercise of jurisdiction must be reasonable under the circumstances."  *Id.*  "The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss."  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).

This Court does not have jurisdiction over the claims of the non-resident Plaintiffs because the second requirement—that their claims arise out of or relate to Pete and Gerry's

forum conduct—is not met.  *See id.* at 1780 ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.") (quotation marks omitted).  The claims of Plaintiffs Alvarado, Modi, Gray, Sewell, and Romano are based on purchases made outside of New York.  *See, e.g.,* SAC ¶ 19 ("Denise bought Nellie's eggs exclusively for several years at a Safeway in Petaluma, California."); SAC ¶ 22 (Sewell "purchase[d] Nellie's eggs at Safeway and Food Lion in Waldorf, Maryland for years.").  There are no allegations that these Plaintiffs viewed the Pete and Gerry's website, advertising, or marketing materials in New York, or that there was any other conduct of Pete and Gerry's directed at them in New York.  That being so, their claims do not arise out of or relate to Pete and Gerry's contacts with New York, and dismissal for lack of personal jurisdiction is required. *See, e.g., Spratley v. FCA US LLC*, No. 17-CIV-062, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017) (dismissing claims of named plaintiffs in proposed class action who were "not New York residents, and . . . did not purchase their allegedly defective vehicles in New York"); *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 56–57 (D. Mass. 2018) ("District courts generally have extended the specific jurisdiction principles articulated in *Bristol-Myers* to the analysis of personal jurisdiction over named plaintiffs in federal class actions.").

### b)  The claims of putative members of the class residing outside of New York should be dismissed for lack of specific jurisdiction.

This Court also lacks specific jurisdiction over the claims of unnamed class members who did not purchase Nellie's eggs in New York.  The mere fact that some putative class members had New York-related contacts with Pete and Gerry's does not give this Court jurisdiction over the claims of putative class members who did *not* have New York-related contacts with the company.

21

As summarized by the leading treatise on class action litigation, "the Supreme Court's recent cases point to the conclusion that neither general nor specific jurisdiction exists over nationwide class suits except in the defendant's home states."  Newberg on Class Actions § 6:26 (2018 update).  Newberg explains:

> If the class prevails in the case, the goal is a binding judgment over the defendant as to the claims of the entire nationwide class—and the deprivation of the defendant's property accordingly.  Such a class-wide deprivation triggers a defendant's right to class-wide due process, that is, its right to ensure the requisite territorial connection between it and the court as to the full scope of its liability.

*See id.*

To meet the requirement of "class-wide due process" after *Bristol-Myers*, class action plaintiffs must demonstrate that the Court has personal jurisdiction over the claims of each unnamed class member.  *See Mussat v. IQVIA Inc.*, No. 17-CIV-8841, 2018 WL 5311903, at *5 (N.D. Ill. Oct. 26, 2018) (*Bristol-Myers* "bars nationwide class actions in fora where the defendant is not subject to general jurisdiction"); *DeBernardis v. NBTY, Inc.*, No. 17-CIV-6125, 2018 WL 461228, *2 (N.D. Ill. Jan. 18, 2018) (applying *Bristol-Myers* "to outlaw nationwide class actions in a forum . . . where there is no general jurisdiction over the Defendants."); *Wenokur v. AXA Equitable Life Ins. Co.*, No. 17-CIV-165, 2017 WL 4357916, at *4 n. 4 (D. Ariz. Oct. 2, 2017) (citing *Bristol-Meyers* for the proposition that the court "lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class."); *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711, 723 (E.D. Mo. 2019) ("[T]his Court agrees with several courts in the Northern District of Illinois which have held that [*Bristol-Myers*] applies with equal force in the class

action context . . . ."). The Court should therefore rule that it does not have jurisdiction over the claims of unnamed class members who did not purchase Nellie's eggs in New York.[10]

## C. **If Plaintiffs want to maintain this action as a nationwide class action, then the Court should transfer the case to the District of New Hampshire.**

Fortunately for Plaintiffs, there is a simple solution to this problem. If the Plaintiffs want to pursue a nationwide class action against Defendants, then this case should be transferred to the District of New Hampshire, where the court may exercise general jurisdiction over Defendant with respect to the claims of all Plaintiffs.

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Deciding a motion to transfer venue is a two-step process. First, the Court must determine whether the case could originally have been brought in the transferee district." *Glass v. S & M NuTec, LLC*, 456 F. Supp. 2d 498, 501 (S.D.N.Y. 2006). "Second, the Court must examine whether transfer is warranted in light of the following factors: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a plaintiffs' choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the

---

[10] Defendants acknowledge that not all courts have reached the same conclusion on this point. For instance, in *Molock v. Whole Foods Mkt., Inc*., 297 F. Supp. 3d 114, 125 (D.D.C. 2018), *motion to certify appeal granted sub nom. Molock v. Whole Foods Mkt. Group, Inc*., 317 F. Supp. 3d 1 (D.D.C. 2018), while the Court held that *Bristol-Myers* required that the injury alleged by the *named plaintiffs* "arise out of or relate to [the] Defendants' contacts with the forum," it found that "*Bristol–Myers* does not require a court to assess personal jurisdiction with regard to all non-resident putative class members." *Id.* at 127. The district court's decision has been appealed to the D.C. Circuit. Courts in this district have generally chosen to defer this determination to the class certification stage. *See, e.g., Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 250 (S.D.N.Y. 2019); *Suarez*, 2019 WL 1046662, at *6 ("[T]he Court need not assess personal jurisdiction over plaintiff's putative out-of-state class action claims unless and until the Court decides a class comprising out-of-state class members merits certification.")

circumstances." *Id*. "This list of factors is not exhaustive; there is no rigid formula for balancing them; and no single factor is determinative." *Placek v. Shopoff*, No. 18-CIV-4326, 2018 WL 4572253, at *3 (S.D.N.Y. Sept. 24, 2018).

As set forth above, there is no dispute that the District of New Hampshire would have general jurisdiction over Pete and Gerry's to entertain claims brought by consumers from any state. The next step in the analysis under Section 1404(a) requires the Court to consider the relevant factors. The most important factor to the transfer analysis here is the final one listed in *Glass* (factor 9), "trial efficiency and the interests of justice, based on the totality of the circumstances." 456 F. Supp. at 501.

The most obvious advantage of pursuing this litigation in the District of New Hampshire is that the court would have personal jurisdiction over the claims of *all* of the Plaintiffs and putative class members, whereas this Court—for the reasons given in section B above—only has personal jurisdiction over the claims of the New York Plaintiffs. In addition to resolving the problem of personal jurisdiction over the non-resident Plaintiffs, transfer to the District of New Hampshire would obviate the need to predict how the law will evolve over the coming months and years on whether *Bristol-Myers* requires that a court have personal jurisdiction over a class-action defendant with respect to the claims of each unnamed class member.

Other factors regarding the administration of justice also support transfer to New Hampshire. "Although certainly not decisive, docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co*., 419 F. Supp. 2d 395, 407 (S.D.N.Y. 2005) (quotation marks omitted). Data published by the Administrative Office of the U.S. Courts indicate that the District of New Hampshire's docket is substantially less congested than this Court's docket. In

24

2018 the Southern District of New York had 687 pending cases per judgeship; the District of New Hampshire had over 100 fewer pending cases per judgeship (575). *See* https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2018/12/311. The disparity is greater when expressed in terms of "Weighted Filings," a method for weighting cases based on their complexity: in 2018 this district had 575 Weighted Filings per judgeship, whereas the District of New Hampshire had just 431.[11] *Id* Because the docket in the District of New Hampshire is less congested than the docket here, trial efficiency and the interests of justice would be advanced by transferring the case to New Hampshire.

**D.  Discovery should be stayed pending resolution of the motion to dismiss.**

Given the implausibility of the claims set forth in the Second Amended Complaint, a stay of discovery pursuant to Rule 26(c) of the Federal Rules of Civil Procedure is appropriate. Rule 26(c) provides this Court with the discretion to stay discovery "for good cause." A motion to stay discovery pending the determination of a dispositive motion is an appropriate exercise of this Court's discretion. Because the adjudication of the pending motion to dismiss may result in the dismissal of all counts, which would obviate the need for costly and time-consuming discovery, it is appropriate to stay discovery pending resolution of this motion. *See generally, Avnet, Inc. v. American Motorists Ins. Co.*, 115 F.R.D. 588, 592 (S.D.N.Y. 1987); *F.H. Krear & Co. v. 19 Named Trustees*, 91 F.R.D. 497, 498 (S.D.N.Y. 1981); *Weinberger v. Kendrick*, 432 F. Supp. 316, 322 (S.D.N.Y. 1977).

---

[11] When the focus is narrowed to civil cases over three years old—a measure of docket congestion in general but also a plausible proxy for large, complex cases like this one—in this district 18% of the civil cases fall into that category, as compared to just 2.2% of civil cases in the District of New Hampshire. *Id* Given these facts, this court has recognized that it is significantly busier than other district courts. *See, e.g., Hamilton v. Mead*, No. 18-CIV-9734, 2019 WL 949009, at *9 (S.D.N.Y. Feb. 14, 2019) ("[T]he Southern District's docket is at present very congested, with record numbers of filings last year and six judicial vacancies.") (footnote omitted); *Cont'l Cas. Co. v. Hopeman Bros., Inc.*, No. 17-CIV-688, 2018 WL 1581987, at *13 (S.D.N.Y. Mar. 27, 2018) ("[T]he Southern District of New York is one of the busiest courts in the nation.") (quotation marks omitted).

## CONCLUSION

As set forth in detail above, all of Plaintiffs' claims against Defendant are implausible because they rely upon statements that are subjective, vague, and unmeasurable.  This "puffery" is not actionable.  In the event that the Court does not dismiss the Second Amended Complaint in its entirety, the Court should dismiss the claims brought by the non-residents of New York (and the class they purport to represent) for lack of personal jurisdiction.   As an alternative to dismissing these non-New York plaintiffs, the Court should transfer this matter to the District of New Hampshire because that district court could properly exercise personal jurisdiction over the claims of all consumers.

Dated: September 16, 2019                         Respectfully submitted,

By:     /s/ Peter T. Shapiro
        Peter T. Shapiro, Esq.
        Lewis Brisbois Bisgaard & Smith LLP
        77 Water Street, Suite 2100
        New York, NY 10005
        212.232.1322
        Peter.shapiro@lewisbrisbois.com

        Nathan R. Fennessy, Esq. (admitted *pro hac vice*)
        Preti Flaherty Beliveau & Pachios LLP
        P.O. Box 1318
        Concord, NH 03302-1318
        603-410-1500
        nfennessy@preti.com

        Gregory P. Hansel, Esq. (admitted *pro hac vice*)
        Sigmund D. Schutz, Esq. (admitted *pro hac vice*)
        Preti Flaherty Beliveau & Pachios LLP
        P.O. Box 9546
        Portland ME 04112-9546
        207-791-3000
        ghansel@preti.com
        sschutz@preti.com

        ***Attorneys for Defendants Pete and Gerry's Organics, LLC and Nellie's Free Range Eggs***

26