**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X

MICHELLE LUGONES, TRICIA RIZZI, MARCUS   :
SIEZING, CLAUDIA VASSALLO, DENISE          :   Civil Case No.: 19-cv-02097
ALVARADO, MINOEE MODI, ISABELLE GRAY, :
KARINE SEWELL, and SONJA ROMANO,      :
Plaintiffs, on behalf of themselves and as proposed  :
class representatives of a Class of similarly situated   :
individuals, and                               :
                                         :
ANNE FLOURNOY,                         :
  Plaintiff and member of the putative Class,     :
                                         :
             v.                         :
                                         :
PETE AND GERRY'S ORGANICS, LLC and     :
NELLIE'S FREE RANGE EGGS,            :
                                         :
              Defendants.      :
-------------------------------------------------------------- X

## PLAINTIFFS' MEMORANDUM OF LAW
## <u>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

**WIGDOR LLP**

Jeanne M. Christensen, Esq.
Julia L. Elmaleh-Sachs, Esq.

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800

**PETA FOUNDATION**

Asher Smith

1536 16th Street, NW
Washington, DC 20036
Telephone:  (202) 483-7382

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

ARGUMENT ............................................................................................................................ 4

I.    Plaintiffs Relied on Defendants' False Statements of Material Fact About Their Animal
      Welfare Practices ........................................................................................................... 5

      A.    Each Nellie's Carton Contains Words and Images That, Taken Together, Present
            False Claims About Defendants' Animal Welfare Practices.................................. 5

      B.    Nellie's Website Presents Even More Precise False Claims ................................. 7

II.   Consumer Protection Law Protects Consumers from Misleading Combinations of Words
      and Images Such as Those in Defendants' Advertisements ................................ 8

III.  Plaintiffs Adequately Pled Reasonable Consumer Reliance on Defendants' False and
      Misleading Claims ...................................................................................................... 15

IV.   Plaintiffs Adequately Pled Claims Sounding in Fraud, Breach of Express Warranty, and
      Seeking Injunctive Relief........................................................................................... 18

      A.    Plaintiffs Adequately Pled Claims Sounding in Fraud ........................................ 18

      B.    Plaintiffs Adequately Pled Breach of Express Warranty..................................... 20

      C.    Plaintiffs' Allegations Adequately Support Injunctive Relief............................. 22

V.    Plaintiffs Have Met Their Jurisdictional Burden at the Pleading Stage .......................... 22

CONCLUSION........................................................................................................................ 26

## **TABLE OF AUTHORITIES**

### **Cases**

*Allen v. ConAgra Foods, Inc.*,
  Case No. 3:13 Civ. 01279, 2018 WL 6460451 (N.D. Cal. Dec. 10, 2018) ............................ 24

*Anderson v. Bungee Int'l Mfg. Corp.*,
  44 F. Supp. 2d 534 (S.D.N.Y. 1999)................................................................ 15

*Asis Internet Servs. v. Subscriberbase Inc.*,
  2010 WL 1267763 (N.D.Cal. Apr. 1, 2010) ................................................. 16, 20

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  305 F.3d 120 (2d Cir. 2002)........................................................................... 25

*Bank of Am. Corp. v. Lemgruber*,
  385 F. Supp. 2d 200 (S.D.N.Y. 2005)......................................................... 18, 20

*Brenner v. Procter & Gamble Co.*,
  2016 WL 8192946 (C.D. Cal. Oct. 20, 2016)................................................... 11

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017)................................................................................... 24

*Cablevision Systems Corp. v. Verizon New York Inc.*,
  119 F. Supp. 3d 39 (E.D.N.Y. 2015) ........................................................ 12, 13

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*,
  228 F.3d 24 (1st Cir. 2000)........................................................... 7, 10, 19, 21

*Cohen v. JP Morgan Chase & Co.*,
  498 F.3d 111 (2d Cir. 2007)........................................................................... 16

*CoolSavings.Com, Inc. v. IQ.Commerce Corp.*,
  53 F. Supp. 2d 1000 (N.D. Ill. 1999) ............................................................. 26

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir.) .................................................................................. 23

*Doehla v. Wathne Ltd., Inc.*,
  No. 98 Civ. 6087 (CSH), 1999 WL 566311 (S.D.N.Y. Aug. 3, 1999).................... 20

*Eidelman v. Sun Prod. Corp.*,
  No. 16 Civ. 3914 (NSR), 2017 WL 4277187 (S.D.N.Y. Sept. 25, 2017) .......................... 16, 20

*Fialkov v. Microsoft Corp.*,
  72 F. Supp. 3d 1220 (W.D. Wash. 2014) ................................................................. 15

*Fischer v. Mead Johnson,*
  *Lab.*, 41 A.D.2d 737, 341 N.Y.S.2d 257 (N.Y.App.Div.1973) ................................. 22

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
  No. 17 Civ. 00564 (NC), 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) ............................... 24

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ................................................................................ 17

*Frota v. Prudential-Bache Sec., Inc.*,
  639 F. Supp. 1186 (S.D.N.Y. 1986) ...................................................................... 15

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ................................................................ 20, 21, 22

*Gonzalez v. Costco Wholesale Corp.*,
  2018 WL 4783962 (E.D.N.Y. Sept. 29, 2018) ......................................................... 11

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
  58 F.Supp.2d 228 (S.D.N.Y.1999) ......................................................................... 20

*Hubbard v. Gen. Motors Corp.*,
  No. 95 Civ. 4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996) .............................. 15

*Hughes v. Ester C Co.*,
  930 F. Supp. 2d 439 (E.D.N.Y. 2013) .................................................................. 19

*Icon Health & Fitness, Inc. v. Nautilus Group, Inc.*,
  No. 02 Civ. 109, 2004 WL 6031124 (D. Utah Dec. 21, 2004) ................................. 15

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  801 F. Supp. 2d 993 (S.D. Cal. 2011) ................................................................... 22

*Int'l Playthings LLC v. Toy Teck Ltd., LLC*,
  No. 11 Civ. 6832 (KM), 2013 WL 8184357 (D.N.J. July 23, 2013) ......................... 26

*Jou v. Kimberly-Clark Corp.*,
 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) .................................................................. 11, 17

*Knotts v. Nissan N. Am., Inc.*,
 346 F. Supp. 3d 1310 (D. Minn. 2018) .................................................................................. 24

*Legros v. Irving*,
 354 N.Y.S.2d 47 (N.Y. Sup. Ct. 1973) ................................................................................. 25

*Mullins v. Premier Nutrition Corp.*,
 178 F. Supp. 3d 867 (N.D. Cal. 2016) ............................................................................ 16, 20

*Myers-Taylor v. Ornau Foods N. Am.*,
 18 Civ. 1538, 2019 WL 424703 (S.D. Cal. Feb. 4, 2019) ..................................................... 15

*New York v. Debt Resolve, Inc.*,
 387 F. Supp. 3d 358 (S.D.N.Y. 2019) ..................................................................................... 4

*Newbro v. Freed*,
 No. 03 Civ. 10308(PKC), 2004 WL 691392 (S.D.N.Y. Mar. 31, 2004) ................................ 25

*Ong v. Chipotle Mexican Grill, Inc.*,
 No. 16 Civ. 141 (KPF), 2017 WL 933108 (S.D.N.Y. Mar. 8, 2017) ..................................... 15

*Panda Capital Corp. v. Kopo Int'l, Inc.*,
 662 N.Y.S.2d 584 (N.Y. App. Div. 1997) .............................................................................. 22

*Parks v. Ainsworth Pet Nutrition*, LLC,
 377 F. Supp. 3d 241 (S.D.N.Y. 2019) .............................................................................. 24, 25

*PETA v. Whole Foods Market Cal., Inc.*,
 No. 15 Civ. 4301, 2016 WL 1642577 (N.D. Cal. Apr. 26, 2016) .......................................... 15

*Petrosino v. Stearn's Prod., Inc.*,
 No. 16 Civ. 7735 (NSR), 2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) ................................ 23

*Pizza Hut, Inc. v. Papa John's Intern., Inc.*,
 227 F.3d 489 (5th Cir. 2000) .................................................................................................. 13

*Pulse Creations*,
 154 F. Supp. 3d ........................................................................................................................ 4

*Shank v. Presidio Brands, Inc.*,
  2018 WL 510169 (N.D. Cal. Jan. 23, 2018) ............................................................ 11

*Shin v. BMW of N. Am.*, No. 09 Civ. 00398 (AHM)(AJW),
  2009 WL 2163509 (C.D. Cal. July 16, 2009) ......................................................... 17

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
  2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ........................................... 16, 20, 21

*Suarez v. California Nat. Living, Inc.*,
  No. 17 Civ. 9847 (VB), 2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) ........... 5, 24, 25

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007) ........................................................................... passim

*Tomasino v. Estee Lauder Companies, Inc.*,
  No. 13 Civ. 4692 (ERK)(RML), 2015 WL 4715017 (E.D.N.Y. Aug. 7, 2015) ....... 22

*Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*,
  971 F. Supp. 2d 368 (S.D.N.Y. 2013) ...................................................................... 4

*U.S. Bank National Association v. PHL Variable Insurance Company*,
  No. 12 Civ. 6811, 2013 WL 791462 (S.D.N.Y. Mar. 5, 2013) ............................... 12

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
  309 F. Supp. 2d 401 (E.D.N.Y. 2004) .................................................................... 11

*Walker v. Bank of Am. Corp.*,
  No. 8:18 Civ. 02466 (PWG), 2019 WL 3766824 (D. Md. Aug. 8, 2019) ............... 19

*Ward v. TheLadders.com, Inc.*,
  3 F. Supp. 3d 151 (S.D.N.Y. 2014) ........................................................................ 20

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008) ........................................................................... 11, 17

*Workman v. Plum Inc.*,
  141 F. Supp. 3d 1032 (N.D. Cal. 2015) .................................................................. 17

*Wysong Corp. v. APN, Inc.*,
  889 F.3d 267 (6th Cir. 2018) ........................................................................... 14, 17

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................................ 19

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 4

Fed. R. Civ. P. 23 ..................................................................................................... 24, 26

Fed R. Civ. P. 26(f) ......................................................................................................... 26

N.Y. C.P.L.R. § 302 ......................................................................................................... 25

## **Other Authorities**

*Federal Practice and Procedure* § 1067.2 ................................................................... 24

U.C.C. § 2-607(3)(a) ......................................................................................................... 22

William Rubenstein, *Newberg on Class Actions* § 6:26 .............................................. 24

Plaintiffs individually, and as proposed class representatives on behalf of a similarly situated Class, respectfully submit this memorandum of law in opposition to Defendants Pete and Gerry's Organics, LLC, and Nellie's Free Range Eggs ("Nellie's" or "Defendants"), motion to dismiss the Second Amended Complaint ("SAC"). For the reasons set forth herein, Defendants' motion to dismiss should be denied in its entirety.

## **PRELIMINARY STATEMENT**

Consumers from coast to coast, including Plaintiffs, purchased Nellie's eggs at premium prices. They did so because they believed Nellie's treats chickens more humanely than other free range egg sellers. These consumers did not suffer under shared delusions "neither plausible nor reasonable." They believed what Defendants told them.

Defendants' product packaging communicates ad nauseam that Nellie's brand is love, kindness, green grass and better lives for animals. These are not standalone slogans. Nellie's egg cartons give definition to the slogans with paragraph-length descriptions —that, for example, hens can "peck, perch, and play on plenty of green grass"— and photos purporting to illustrate life on Defendants' farms. Defendants invite any consumers seeking confirmation to check Nellie's website. On Nellie's website, they would have seen additional photos and similar messages, including literal bullet-point "**guarantees**" that on Defendants' "small, free range farms" hens "have easy access to the outdoors with real grass to peck, play and dust bathe." Defendants contrast life on their farms with the lives of those unfortunate hens "still liv[ing] inside a space much more like a large overcrowded warehouse."

This is literally false and misleading. As Plaintiffs allege, Defendants cram 20,000 hens, their beaks cut as chicks, together in noisy barns resembling overcrowded warehouses. Such conditions cause hens painful injuries, distress, trauma, mutilation and illness. These conditions

also prevent many hens from ever accessing the green grass Defendants sell to consumers. Defendants' commercially unnecessary and inhumane animal husbandry practices cause the hens to become prematurely spent of calcium, which leads to painful and life-threatening conditions. Defendants then sell the hens for slaughter alongside factory-farmed hens.

The Second Amended Complaint details multiple facts sufficient to deny dismissal at this pleading stage. Indeed, consumer protection laws are designed to remedy the exact false claims as alleged in this action. Courts evaluating claims under these laws regularly grant plaintiffs redress for advertisements, like those described above, that give false definition to slogans similar to "WE LOVE OUR HENS" and "BETTER LIVES FOR HENS" via images and broader context. This Court should do the same. As detailed below, Defendants' Motion to Dismiss should be dismissed in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

With annual revenue in the hundreds of millions, and endorsement deals with entities such as the Boston Red Sox, Defendants are among the largest sellers of premium-priced eggs from purportedly "free range" laying hens. Second Amended Complaint ("SAC"), at ¶¶ 25-28.

Each carton of Nellie's eggs contains slogans and images invoking and depicting small family farms, love of hens, better lives for hens, kindness, green grass and outdoor forage. SAC, at ¶¶ 43-47. Each carton also invites consumers to visit Nellie's website, which contains additional images of small family farms and further "guarantees," in part, that:

- "Nellie's hens have the freedom to move about their barns and adjoining pasture at will."
- "Hens live in 'floor barns' (i.e. no cages or levels) and have plenty of space to perch and socialize."
- "They have easy access to the outdoors with real grass to peck, play, and dust bathe."
- "[I]f there was a better way to raise them — we'd be doing it."

SAC, at ¶¶ 48-67.

Plaintiffs allege that this is deceptive. Plaintiffs' allegations include footage and descriptions of warehouses in which Defendants cram up to 20,000 hens at a time. SAC, at ¶¶ 85-86. Plaintiffs allege this overcrowding prevents hens from making their way to the outdoor space Nellie's advertises so prominently. SAC, at ¶¶ 93-97. Plaintiffs also allege this confinement leads to stress and trauma that causes further pain via fighting, feather pecking and self-mutilation. SAC, at ¶¶ 87-91. Plaintiffs further allege that Defendants systematically cut the beaks of newborn chicks—the females who were not macerated or gassed at birth—which causes lifelong suffering. SAC, at ¶¶ 70-75, 77-83. The end of these hens' life cycle, per Plaintiffs' allegations, is to be prematurely spent of calcium—at which point, despite Defendants' promises to consumers, the hens are sold to slaughterhouses and live markets. SAC, at ¶¶ 99-116.

Plaintiffs are residents of New York, North Carolina, Maryland, Georgia, Massachusetts and California who seek to bring this action against Defendants on behalf of a nationwide class. SAC, at ¶¶ 16-24. Plaintiffs allege that they are among the consumers deceived into believing Defendants provide chickens meaningful access to the outdoors as well as freedom from inhumane but commercially unnecessary practices. SAC, at ¶¶ 16-24, 76, 84, 92, 98, 117.

Plaintiffs filed this lawsuit in the Southern District of New York based on diversity of citizenship. SAC, at ¶ 12. Five of the ten named Plaintiffs reside in New York and purchased eggs from Defendants in Manhattan and other parts of New York. SAC, at ¶¶ 12-13, 16-19, 24. Plaintiffs further allege that Defendants market and sell thousands, if not millions, of deceptively advertised eggs in New York and Manhattan every day. SAC, at ¶¶ 13-14.

Plaintiffs filed this action on March 6, 2019. Dkt. No. 1. Plaintiffs filed an Amended Complaint, including additional proposed class representatives, on May 7, 2019. Dkt. No. 10. On May 20, 2019, Defendants requested a pre-motion conference. Dkt. No. 18. Plaintiffs filed a

response arguing, inter alia, that Defendants' anticipated arguments were premature because they implicated class certification. Dkt. No. 22. On June 27, 2019, this Court held a pre-motion conference at which it granted Plaintiffs leave to file a further amended complaint and set a briefing schedule. Plaintiffs filed their Second Amended Complaint on July 29, 2019. Dkt. No. 29. Defendants filed their Motion to Dismiss ("MTD") on September 16, 2019. Dkt. Nos. 30-31.

## ARGUMENT

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is not warranted where a complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). To satisfy Rule 12(b)(6), Plaintiffs' short and plain statement of the claim need only "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Here, the Court must assume that all of the facts alleged by Plaintiffs are true, construe those facts in the light most favorable to Plaintiffs, and draw all reasonable inferences in favor of Plaintiffs. *See, e.g., New York v. Debt Resolve, Inc.*, 387 F. Supp. 3d 358, 364 (S.D.N.Y. 2019). The Court may not consider extrinsic evidence in evaluating a motion under Fed. R. Civ. P. 12(b)(6).[1] *Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 52 (S.D.N.Y. 2015). The question is not whether Plaintiffs will ultimately prevail. *Bell Atl. Corp.*, 550 U.S. at 556.

---

[1] Defendants make no argument that Exhibit A to their Motion to Dismiss relates in any way to facts alleged in the SAC, documents attached to the complaint as exhibits or documents incorporated by reference in the SAC. MTD, at 1. Since it is undisputed that Exhibit A is extrinsic to the pleadings, this Court should disregard it. *See Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*, 971 F. Supp. 2d 368, 381 (S.D.N.Y. 2013) (excluding evidence beyond "the complaint and any documents incorporated therein"). *See also Pulse Creations*, 154 F. Supp. 3d at 52 (same).

I.    **Plaintiffs Relied on Defendants' False Statements of Material Fact About Their
Animal Welfare Practices**

Plaintiffs more than adequately allege facts that, if true, plausibly state claims for

violations of the relevant state laws. Defendants mischaracterize their advertising, proceeding as

if each of the words and images on Nellie's cartons appears in isolation. *See, e.g.*, MTD, at 6-11.

But that is not what Plaintiffs saw when deciding to purchase Nellie's eggs, SAC, at ¶¶ 16-24,

and it is not how courts evaluate false advertising. Instead, each component of Defendants'

advertising must be considered "'in light of its context on the product label or advertisement as a

whole,' contemplating 'the entire mosaic . . . rather than each tile separately.'" *Suarez v.*

*California Nat. Living, Inc.*, No. 17 Civ. 9847 (VB), 2019 WL 1046662, at *7 (S.D.N.Y. Mar. 5,

2019) (concluding that descriptions of products as "natural" or "naturally perfect for the whole

family" would deceive a reasonable consumer). *See also Time Warner Cable, Inc. v. DIRECTV,*

*Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) ("a district court evaluating whether an advertisement is

literally false 'must analyze the message conveyed in full context,' . . . i.e., it 'must consider the

advertisement in its entirety and not . . . engage in disputatious dissection[.]'").

A.    **Each Nellie's Carton Contains Words and Images That, Taken Together,
Present False Claims About Defendants' Animal Welfare Practices**

Defendants superimpose the slogans on Nellie's egg cartons over photos purporting to

illustrate life on Nellie's farms. These slogans—chiefly, versions of "BETTER LIVES FOR

HENS" and "WE LOVE OUR HENS"—appear over photos of small flocks of hens roaming and

foraging on the pastures of small farms. SAC, at ¶ 46. Other messaging on the outside and inside

of the cartons further defines these slogans and images. For instance, many cartons of Nellie's

eggs seen by Plaintiffs explain that while "[m]ost hens don't have it as good as Nellie's," hens on

Defendants' farms "can peck, perch, and play on plenty of green grass."  SAC, at ¶¶ 44-46. They

also promise "OUTDOOR FORAGE" while further referencing "love" and "kindness."  *Id.* The

relevant issue for this Court is what this entire mosaic of words and images conveys, not what each word of each slogan means after "disputatious dissection." *Time Warner Cable*, 497 F.3d at 158; *Suarez*, 2019 WL 1046662, at *7.

Analysis of this entire mosaic reveals Defendants are wrong that the words and images at issue are not "objective statements" or "concrete representations to consumers." SAC, at ¶¶ 4-11. Each carton, as described above, makes factual assertions that Defendants' provision of better lives, love, and kindness means that hens, in Defendants' own words, "can peck, perch, and play on plenty of green grass" and forage in depicted outdoor areas. SAC, at ¶¶ 44-46.

The fact Plaintiffs can prove these words and images to be objectively false is further evidence they are objective, concrete representations. As Plaintiffs allege in detail, Defendants cram 20,000 hens together in noisy barns resembling barren warehouses. SAC, at ¶ 86. This not only causes hens painful injuries, distress, trauma, mutilation and illness, *see* SAC, at ¶¶ 87-91, but prevents many hens from ever accessing the green grass that Defendants depict on each carton and brag that hens can "peck, perch, and play" on. SAC, at ¶¶ 93-97. Because there is no way to interpret the words and images on Defendants' product packaging, when taken together, in a manner that does not imply, e.g., a false message about the degree of outdoor access they provide hens, Defendants' product packaging is susceptible to being characterized as literally false.[2] *Time Warner Cable*, 497 F.3d at 158 ("If the words or images, considered in context, necessarily imply a false message, the advertisement is literally false . . . .").

---

[2] Defendants are correct that Plaintiffs do not include any allegations about Defendants' use of a third-party certification mark. MTD, at 5-6. It is undisputed that all of the inhumane and commercially unnecessary practices discussed in the Second Amended Complaint—including, but not limited to, systemic maceration of male chicks, beak-cutting, cramming 20,000 hens into barren warehouses, lack of outdoor access, premature calcium depletion and sale to commercial slaughterhouses and live markets—are allowed by these standards. *See* MTD, at 5-6. The relevant issue for this Court is whether Plaintiffs have sufficiently alleged that Defendants' advertising makes false promises about Defendants' animal welfare practices above and beyond the thresholds of a third-party certifier.

### B.     Nellie's Website Presents Even More Precise False Claims

If, upon viewing Nellie's egg cartons in the grocery aisle, a reasonable consumer still has any doubt that the words and images on each carton of Nellie's eggs are objective or concrete representations, Defendants invite them to learn more on Nellie's website. SAC, at ¶ 48. Nellie's website gives further definition to all of the statements on the product packaging, such that they "necessarily imply a false message." *Time Warner Cable*, 497 F.3d at 158.

For instance, the multiple Plaintiffs who checked Nellie's website, SAC, at ¶¶ 16, 21, would have seen Defendants' boast that a Nellie's farm "**guarantees** that on every one of our small, free range farms," hens "have plenty of space to perch and socialize" and "have easy access to the outdoors with real grass to peck, play and dust bathe."[3]  SAC, at ¶ 64 (emphasis added). According to Defendants' website, Nellie's eggs are not just compliant with the minimum standards needed for a certification mark—instead, Defendants want consumers to visualize specific conditions in which the hens are purportedly held and understand that Nellie's eggs are the gold standard, since "if there *was* a better way to raise [hens]—we'd be doing it." SAC, at ¶ 66 (emphasis in original). *See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 34-39 (1st Cir. 2000) (vacating and remanding grant of motion to dismiss because claim "[w]hiter is not possible" for a laundry detergent was literally false by necessary implication because bleach could provide a whiter washing).

Other sections of Nellie's website further define the words and images on each carton. A section of Nellie's website purporting to explain "LIFE ON A FREE RANGE FARM" tells consumers: "Our happy hens are free to roam and strut throughout their wide open pasture. They peck at bugs and flowers, cluck around in groups, and just live as free as a bird all day long."

---

[3] Defendants are simply mistaken in suggesting that Plaintiffs "did not see" any of the statements or images from Defendants' website. MTD, at 10 n. 6. Multiple Plaintiffs allege checking Nellie's website, which "reinforced" the representations they saw on the product packaging. SAC, at ¶¶ 16, 21.

SAC, at ¶ 56. Elsewhere on Nellie's website, consumers learn "Nellie's Free Range Hens are among the happiest hens on earth [because] [t]hey love spending their days in sunshine and laying nutritious eggs that simply taste better than factory-farmed eggs." SAC, at ¶ 58. And elsewhere, yet again, that "**Nellie's hens have the freedom to move about their barns and their adjoining pasture at will**." SAC, at ¶ 60 (emphasis added). Defendants pair these messages with photos, ostensibly depicting Defendants' farms, substantively identical to the images shown on each carton of Nellie's eggs. SAC, at ¶¶ 57, 59, 61, 63.

Videos on Nellie's website also show farms similar to those on Nellie's cartons, with hens roaming outdoors. SAC, at ¶¶ 50-54. In one video, Defendants' "Chief Executive Farmer" explains how, because Defendants "believe that hens should be outside," Nellie's hens "enjoy the sunshine and the green grass" SAC, at ¶ 51. In another, Defendants compare Nellie's hens— depicted outside in photos of small farms, and described as "happy" because they "get to live their lives like real hens . . . [w]ith access to pasture every day in good weather [where] our hens can spread their wings, forage in the fields, or scratch in the dirt"—to unfortunate hens "still liv[ing] inside a space much more like a large overcrowded warehouse." SAC, at ¶ 53.

In sum, those parts of Defendants' website included in Plaintiffs' allegations remove any doubt Defendants intend consumers to understand their advertising as "objective statements" or "concrete representations to consumers." MTD, at 4-11; SAC, at ¶¶ 48-67.

## II. Consumer Protection Law Protects Consumers from Misleading Combinations of Words and Images Such as Those in Defendants' Advertisements

Defendants are mistaken that the words and images discussed above are "nonactionable puffery." *See, e.g.*, MTD, at 6. Plaintiffs all reasonably understood the slogans and images discussed above as implying material truths about Defendants' animal welfare practices. No Plaintiff alleged, as Defendants' contend, that they thought a Nellie's farm "provides each hen

with a little girl or boy to care for [him or her] in a large open sunny field." MTD, at 10. Instead, each Plaintiff clearly explains their "leap of logic." MTD, at 14. All Plaintiffs alleged that they reasonably believed that Defendants raised hens on small farms similar to those depicted in Defendants' advertising. SAC, at ¶¶ 16-24. All Plaintiffs alleged that they reasonably believed that Defendants provided hens freedom to roam both pastures and barns that do not resemble overcrowded warehouses, as both implied and explicitly promised in Defendants' advertising. *Id.*, at ¶¶ 16-24, 92, 98. And all Plaintiffs alleged that they reasonably believed that Defendants provided freedom from inhumane but commercially unnecessary practices, as both implied and explicitly promised in Defendants' advertising. *Id.*, at ¶¶ 16-24, 76, 84, 92, 98, 117.

Plaintiffs did not believe these things because they shared delusions that are "neither plausible nor reasonable." MTD, at 10. This is how Nellie's intended them—and the broader population of consumers who base their purchasing decisions on animal welfare, *see* SAC ¶¶ 41-43—to understand their product packaging. *See* SAC, at ¶¶ 43-67. Each Plaintiff also alleged that Nellie's sells eggs at premium prices that appeared to reflect the practices implied by Defendants' advertising. SAC, at ¶¶ 16-24. In addition, three Plaintiffs supported these inferences via reflection on their own personal experiences with small family farms similar to those depicted in Defendants' advertising. SAC, at ¶¶ 16, 22, 24.

Defendants' treatment of Plaintiff Minoee Modi is particularly unjustifiable in light of their advertising. Ms. Modi states that Defendants' profession of "love" and "better lives" for hens on its packaging "led [her] to believe Nellie's was making a higher promise than just 'cage free' or 'free range,'" and that "she had found an egg seller that treated chickens like companion animals in a family." SAC at ¶ 20. Defendants argue "[t]here is no explanation provided in the Second Amended Complaint as to why a reasonable consumer would draw such a conclusion[,]

[n]or does the Second Amended Complaint point to where this purported 'higher promise' is made."  MTD, at 14. Defendants then mischaracterize Ms. Modi's statement by arguing "it is simply not plausible that a reasonable consumer would believe that a company selling millions of eggs each year would be treating each laying hen like the family dog."  *Id.*

      This is not what is alleged. Instead of thinking each laying hen would be treated like a "family dog," Ms. Modi took Defendants to mean they merely provide chickens "freedom to roam with access to grass as well as freedom from chick culling, beak-cutting, calcium depletion, sale to commercial slaughterhouses and live markets, and from any other actions inconsistent with a common sense understanding of love."  SAC, at ¶ 20. Meanwhile, it is Defendants, not Ms. Modi, who introduced the comparison to companion animals. Children lovingly hugging hens is a regular motif on Nellie's packaging. SAC, at ¶ 46. Nellie's website tells consumers, in words accompanying another photo of a child hugging a hen, that "our family farmers treat all of our free range hens like they would treat any friend, with love and gratitude."  SAC, at ¶ 62. The "origin story" of the Nellie's brand is that Defendants' CEO had "a pet chicken at home named Nellie" who he would allow to play outdoors. SAC, at ¶ 55. Finally, and as explained above and in the Second Amended Complaint, the entire Nellie's brand is built around the premise it is making a "higher promise" to consumers regarding animal welfare. SAC, at ¶¶ 43-67. Ms. Modi hardly seems like the one with an unreasonable understanding of Defendants' guarantees to treat Nellie's hens "like they would treat any friend."  SAC, at ¶ 62.

      Defendants' position that companies are shielded from liability for consumers' reasonable inferences from the words and images in its advertising is not the law. Courts regularly determine advertisements that communicate their messages via evocative images and word choices mislead consumers. *See, e.g., Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th

Cir. 2008) (pictures of fruits on "fruit juice snacks" potentially suggest those fruits were contained in the product); *Gonzalez v. Costco Wholesale Corp.*, 2018 WL 4783962, at *2 (E.D.N.Y. Sept. 29, 2018) (allowing a claim by plaintiff who "reviewed and relied on [a product's] 'environmentally responsible' labeling and images, such as icons resembling recycling symbols, water drops, leaves, and a central image of a leaf floating in pristine water"); *Shank v. Presidio Brands, Inc.*, 2018 WL 510169, at *9 (N.D. Cal. Jan. 23, 2018) ("Presidio labels its products as containing 'only naturally derived ingredients'; this statement, taken with the use of words such as 'natural,' 'naturally,' and 'naturally-derived' and plant imagery, gives the false impression that the products do not contain synthetic ingredients."); *Brenner v. Procter & Gamble Co.*, 2016 WL 8192946, at *5 (C.D. Cal. Oct. 20, 2016) ("The Pampers Natural Clean product packaging—which includes the phrase 'Natural Clean' in large, greenish text against a green background and individual green packages labeled 'Natural Clean' with depictions of flowering plants—reinforces the inference that a consumer could be misled . . . ."); *Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at *10 (N.D. Cal. Dec. 10, 2013) ("[B]y labeling these wipes as 'Natural Care,' and superimposing that term on an image of a green leaf, it is plausible that a reasonable consumer would likely be led to believe that the wipes contained only natural ingredients."); *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 405 (E.D.N.Y. 2004) (holding that even though commercials depicting more customers choosing one phone book brand over another "are merely playful and absurd" taken literally, they "subtly but firmly communicate an idea—that . . . advertisers will reach more potential consumers if they put their names and money in the former rather than the latter.").

Defendants' misapprehension of the law may explain why so many of the cases they cite counsel against dismissal here. Defendants cite *U.S. Bank National Association v. PHL Variable*

11

*Insurance Company*, No. 12 Civ. 6811, 2013 WL 791462 (S.D.N.Y. Mar. 5, 2013), twice for the proposition that their advertising is puffery because love and kindness are subject to varying interpretations. MTD, at 7, 8. But this case found that the statements "flexible" or "lower premium payments"—relating to insurance policies—were **not** puffery. *U.S. Bank Nat. Ass'n*, 2013 WL 791462, at *6. Instead, the court held these words were not puffery because they are "intended and understood to describe the essential characteristics" of the products. *Id.*, at *7.

Surely Defendants—who have built the Nellie's brand around their animal welfare record, *see, e.g.*, SAC, at ¶¶ 41-67—would agree they intend reasonable consumers to understand love and kindness as the "essential, distinguishing characteristics" of Nellie's eggs. *U.S. Bank Nat. Ass'n*, 2013 WL 791462, at *7 ("[t]o find [these terms] to be mere puffery would drain all meaning from descriptions such as 'flexible' or 'lower premium payments' and leave policyholders unable to rely on any qualitative descriptions of insurance policies."). Defendants cannot be correct that any egg seller, regardless of animal welfare practices, has free rein to deploy photos of small farms, grass, and the concepts of love and kindness.

Defendants' misapprehension of the law also leads them to frequently suggest that any claim requiring consumers make a "subjective interpretation" is puffery. *See* MTD, at 7-8. For example, Defendants cite *Cablevision Systems Corp. v. Verizon New York Inc.*, 119 F. Supp. 3d 39 (E.D.N.Y. 2015), for the proposition that, because "any such conclusion" as to whether "the lives of [Defendants'] hens are 'better' than the lives of other hens cannot be proven true or false," claims involving the slogan "BETTER LIVES FOR HENS" are above the law. MTD, at 7-8. But what *Cablevision* actually says is that "to say that one's product is 'better' than a competitive product, *without more specificity*," could constitute puffery. 119 F. Supp. 3d at 53 (emphasis added). As explained above, Defendants provide this specificity.

12

Defendants make the same mistake in citing *Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489 (5th Cir. 2000). Defendants suggest that the Fifth Circuit deemed "Better ingredients. Better Pizza" a subjective statement. But that portion of the opinion evaluated the slogan "standing alone," explaining that "[w]hat makes one food ingredient 'better' than another, *without further description*, is wholly a matter of individual taste or preference . . . ." *Id.* at 499 (emphasis added). When "*expanded and given additional meaning* when . . . used as the tag line in the misleading sauce and dough ads" the slogan was actionable. *Id.* at 501-502 ("[A] reasonable consumer would understand the slogan, when considered in the context of the comparison ads, as conveying the following message: Papa John's uses 'better ingredients,' which produces a 'better pizza' because Papa John's uses 'fresh-pack' tomatoes, fresh dough, and filtered water. *In short, Papa John's has given definition to the word 'better.' Thus, when the slogan is used in this context, it is no longer mere opinion, but rather takes on the characteristics of a statement of fact.*" (emphasis added)).

Here, as noted above, Defendants' have given their slogans definition. Unlike defendants in *Cablevision*, Defendants provided consumers specificity as to what constitutes "better lives" for hens—telling consumers, e.g., they provide hens freedom to forage outdoors, or to move about their barns and their adjoining pasture at will. SAC, at ¶¶ 43-67.

Other precedent cited by Defendants is inapposite. Defendants frequently return to a Sixth Circuit case, *Wysong Corp. v. APN, Inc.*, 889 F.3d 267 (6th Cir. 2018), to suggest Plaintiffs are drawing unreasonable inferences. *See* MTD, at 10, 12, 14. But in *Wysong*, the Sixth Circuit observed that the plaintiffs' interpretation of claims on dog food packaging was contradicted on the same packaging. 889 F.3d at 270. Nothing on a carton of Nellie's eggs contradicts Plaintiffs' impressions. *See, e.g.*, SAC, at ¶ 46. The Sixth Circuit also observed that, because the dog food

13

at issue in *Wysong* was so "cheap," it was implausible for reasonable consumers to believe that the dog food was made from "the same sumptuous (and more costly) ingredients they find a few aisles over in the people-food sections." *Wysong*, 889 F. 3d at 271-72. But each Plaintiff here paid premium prices for Nellie's eggs, SAC, at ¶¶ 16-24, and one Plaintiff alleged her "trust in Nellie's advertising was reinforced by Nellie's premium prices." SAC, at ¶ 20.

Many of the other cases Defendants cite are similarly inapposite. For example, in *Fink v. Time Warner Cable*, advertising statements that Time Warner internet was "blazing fast" and the "fastest" and the "easiest" were deemed inactionable puffery because they were non-specific and "generalized." 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011), *on recons.*, 2011 WL 5121068 (S.D.N.Y. Oct. 28, 2011). But the Southern District of New York in *Fink* deemed more falsifiable claims—such as "always-on connection"—to be non-puffery. 810 F. Supp. 2d at 644. The claims at hand here—whether, e.g., hens live in the small farms and barns depicted on Nellie's cartons, actually "peck, perch, and play" on depicted green grass, move about their barns "at will," or enjoy freedom from unnecessarily inhumane animal husbandry practices—is susceptible to being proven true or false, and thus more resembles the latter claims.[4]

---

[4] *See also Ong v. Chipotle Mexican Grill, Inc.*, No. 16 Civ. 141 (KPF), 2017 WL 933108, at *12 (S.D.N.Y. Mar. 8, 2017) (assertions that "the majority" of food was prepared in-store and that created "a higher risk" for food-borne illness were "generalizations" commonly made about business practices); *PETA v. Whole Foods Market Cal., Inc.*, No. 15 Civ. 4301, 2016 WL 1642577, at *3 (N.D. Cal. Apr. 26, 2016) (statements such as "great tasting meat from healthy animals" were held to be "taste representations," not claims about animal welfare, where plaintiffs did not allege that the animals were unhealthy). *Fialkov v. Microsoft Corp.*, 72 F. Supp. 3d 1220, 1231 (W.D. Wash. 2014) (concerning a statement that "customers" love defendants' product, as opposed to the statements at issue here, concerning Defendants' love for animals as supported by specific representations); *Icon Health & Fitness, Inc. v. Nautilus Group, Inc.*, No. 02 Civ. 109, 2004 WL 6031124, at *23 (D. Utah Dec. 21, 2004) (applying the *Pizza Hut* holding and deeming a vague, unelaborated statement insufficiently specific, unlike the defined animal welfare claims at issue here); *Anderson v. Bungee Int'l Mfg. Corp.*, 44 F. Supp. 2d 534, 541 (S.D.N.Y. 1999) (deeming the statements "Premium Quality" and "Made in the USA" puffery because they "are not descriptions of particular characteristics of the goods"); *Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996) (deeming the statements "popular," "dependable," and "like a rock" puffery because they "make no reference whatsoever to the type or quality of the vehicles' braking system"); *Frota v. Prudential-Bache Sec., Inc.*, 639 F. Supp. 1186, 1190 (S.D.N.Y. 1986) (deeming a financial broker's statements, e.g., that he was his customers' "friend, confidant and financial advisor" insufficient, without some further elaboration, to support a claim under SEC Rule 10b-5).

14

Likewise, in another case Defendants cite, MTD, at 9, 10, a court held a claim that cows were "grass-fed" was objectively true because the cows were actually grass-fed, and nothing on the product packaging suggested the cows were *only* fed grass. *Myers-Taylor v. Ornau Foods N. Am.*, 18 Civ. 1538, 2019 WL 424703, at *5 (S.D. Cal. Feb. 4, 2019). This bears no resemblance to the case at hand, where Defendants suggest on their product packaging, e.g., hens are able to "peck, perch, and play" on grass like that depicted on Nellie's cartons. While Defendants attempt to obscure this distinction by arguing that Plaintiffs suggest Defendants' advertising is "intended to convey . . . Defendant's hens spend all of their time [on grass]," MTD, at 9-10, this is not an allegation that appears anywhere in the Second Amended Complaint.

## III.   Plaintiffs Adequately Pled Reasonable Consumer Reliance on Defendants' False and Misleading Claims

The issue of whether a reasonable consumer would be deceived by false or misleading product packaging is a question of fact, an inquiry that "is not appropriate on a motion to dismiss." *Eidelman v. Sun Prod. Corp.*, No. 16 Civ. 3914 (NSR), 2017 WL 4277187, at *3 (S.D.N.Y. Sept. 25, 2017) (collecting cases); *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015) (declining to determine as a matter of law that a reasonable consumer would not be deceived by defendant's label marketing yogurt as "Total 0%,"); *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 892 (N.D. Cal. 2016) ("Moreover, California law generally reserves for the jury the question of whether a reasonable consumer is likely to be deceived."); *Asis Internet Servs. v. Subscriberbase Inc.*, 2010 WL 1267763, at *2 (N.D.Cal. Apr. 1, 2010) (collecting cases for the proposition that "whether a reasonable consumer would be deceived by a particular ad or practice is a question of fact").

The cases Defendants cite in support of their argument that this Court should ignore the weight of precedent are instructive. These cases typically acknowledge their exceptional nature.

In *Pelayo v. Nestle USA, Inc.*, the court acknowledged that "[t]he question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss."  989 F. Supp. 2d 973, 978 (C.D. Cal. 2013). That court made an exception because plaintiff's proposed definitions of the phrase "All Natural" were literally self-contradicting and "clearly not applicable" to the products at issue. *Id.* at 978-79.

     *Jessani v. Monini N. Am., Inc.* is typical of these exceptions in that the Second Circuit was considering claims prominently contradicted elsewhere on product packaging. 744 F. App'x 18, 19-20 (2d Cir. 2018). Almost all of the cases cited by Defendants on this point share this feature. *See Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (allegedly deceptive post-closing fee "could not be objectively misleading because it had been disclosed prior to closing."). *See also Wysong*, 889 F.3d at 272 (deeming amended complaints "too threadbare to support the inferences it asks us to pile on here," including an inference that consumers would ignore a prominent disclaimer on product packaging); *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032 (N.D. Cal. 2015) (advertising was not misleading because nutrition facts on package contradicted any impression created by the size of flavored pictured on product packaging); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (concerning a sweepstakes in which "[t]he qualifying language appears immediately next to the representations it qualifies and no reasonable reader could ignore it"). *Cf. Shin v. BMW of N. Am.*, No. 09 Civ. 00398 (AHM)(AJW), 2009 WL 2163509, at *2 (C.D. Cal. July 16, 2009) ("Thus, *Freeman* is an example of a 'rare situation in which granting a motion to dismiss [a deceptive practices claim] is appropriate.'") (quoting *Gerber Prod. Co.*, 552 F.3d at 939) (brackets in original).[5]

---

[5] Another case cited by Defendants, *Jou*, involved a partial dismissal because plaintiff provided no basis for an inference that diapers labeled "Soft Organic Cotton" contained no other ingredients. 2013 WL 6491158, at *10. The court in *Jou* allowed plaintiff's claim that wipes labelled "Natural Care," with that term superimposed on an image of a green leaf, could plausibly be interpreted by as suggesting that the wipes "contained only natural ingredients."

Similarly, in *Jessani*, the Second Circuit explained that "[i]n this context . . . it is simply not plausible that a significant portion of the general consuming public acting reasonably would conclude that Monini's mass produced, modestly-priced olive oil was made with the most expensive food in the world."  744 F. App'x at 19-20. But here, each Plaintiff paid premium prices to obtain the benefit of their bargain—animal welfare conditions consistent with the company's explicit representations. SAC, at ¶¶ 16-24.

Additionally, in *Caper Corp. v. Wells Fargo Bank, N.A.*, the transaction at issue was an interest rate swap between a bank and a corporation, not a consumer transaction. 578 F. App'x 276, 286 (4th Cir. 2014). Exceptions made for sophisticated parties to business transactions are inapposite. *See, e.g.*, *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 230 (S.D.N.Y. 2005) (acknowledging "the sophistication and expertise of the plaintiff in financial matters" as a basis for an exception to the principle that "reasonable reliance is a fact-specific inquiry 'generally considered inappropriate for determination on a motion to dismiss'").

Finally, Defendants are mistaken that "Plaintiffs fail to allege that a reasonable consumer . . . seeing professions of 'love' for hens would have any particular thoughts regarding [Defendants'] animal welfare practices."  MTD, at 12. Each Plaintiff outlined a reasonable logical inference between Defendants' advertising and how they believed Defendants treated animals. SAC, at ¶¶ 16-24, 76, 84, 92, 98, 117. Each Plaintiff alleged that Nellie's sells eggs at premium prices that appeared to reflect the practices implied by Defendants' advertising. SAC, at ¶¶ 16-24. Three Plaintiffs even cited their own experiences with small family farms similar to those depicted in Defendants' advertising. SAC, at ¶¶ 16, 22, 24. In addition, as Plaintiffs allege, a growing population of consumers believes it is important that the egg industry treat chickens humanely and base their purchasing decisions on animal welfare. SAC, at ¶ 41. The food

industry is well aware of, and monitors and reports on, this trend. SAC, at ¶ 41. Plaintiffs allege

that Defendants attempt to appeal to these consumers. SAC, at ¶¶ 42-43.

**IV.    Plaintiffs Adequately Pled Claims Sounding in Fraud, Breach of Express Warranty, and Seeking Injunctive Relief**

A plain reading of Plaintiffs' allegations and relevant law shows Plaintiffs have

adequately pled claims sounding in fraud, breach of express warranty, and for injunctive relief.

### A.    Plaintiffs Adequately Pled Claims Sounding in Fraud

In order to adequately plead claims sounding in fraud, a "complaint must: (1) specify the

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

and when the statements were made, and (4) explain why the statements were fraudulent." *See,*

*e.g.*, *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 452 (E.D.N.Y. 2013). Each Plaintiff here

identified specific fraudulent advertising on which they relied. *See, e.g.*, SAC, at ¶¶ 16-24.

Therefore, Plaintiffs have satisfied the Fed. R. Civ. P. 9(b) pleading standard for claims sounding

in fraud. *See, e.g.*, *Hughes*, 930 F. Supp 2d at 452; *Walker v. Bank of Am. Corp.*, No. 8:18 Civ.

02466 (PWG), 2019 WL 3766824, at *8 (D. Md. Aug. 8, 2019) (holding that Maryland

Consumer Protection Act plaintiff met Rule 9(b) pleading standards).

Defendants—ignoring the second and third elements—resort to repeating their argument

that Plaintiffs "do not allege any specific material fact that Defendant misrepresented."  MTD, at

15. As explained above, this is untrue. Plaintiffs identified specific claims made on Nellie's egg

cartons, and Nellie's website, which are false. *See* SAC, at ¶¶ 16-24, 92, 98. *See also, e.g., Time*

*Warner Cable*, 497 F.3d at 158; *Clorox Co. Puerto Rico*, 228 F.3d at 34-39. Plaintiffs also

identified commercially unnecessary practices in which Defendants are engaged—and which

they reasonably believe Defendants' advertising contradicts—that cause excessive pain and

suffering. SAC, at ¶¶ 16-24, 76, 84, 92, 98, 117.

Defendants also repeat their argument that Plaintiffs have "failed to plead reasonable reliance on those statements."  MTD, at 15. Again, this ignores that each Plaintiff explained their reasonable reliance on Defendants' animal welfare claims. SAC, at ¶¶ 16-24, 76, 84, 92, 98, 117. Defendants' argument also ignores that each Plaintiff alleged that Nellie's sells eggs at premium prices that appeared to reflect the practices implied by Defendants' advertising. *Id*. Three Plaintiffs even cited their own experiences with small farms similar to those depicted in Defendants' advertising. SAC, at ¶¶ 16, 22, 24. Plaintiffs also understood that they are part of a growing population of consumers—eager to spend more on food sourced from animals raised without unnecessary suffering—whose business Nellie's targets. SAC, at ¶¶ 41-43.

Defendants also ignore that "[w]hether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss."  *Doehla v. Wathne Ltd., Inc.*, No. 98 Civ. 6087 (CSH), 1999 WL 566311, at *10 (S.D.N.Y. Aug. 3, 1999). *See also Bank of Am. Corp.*, 385 F. Supp. 2d at 230 (recognizing that "reasonable reliance is a fact-specific inquiry generally inappropriate for determination on a motion to dismiss," while acknowledging potential exceptions for cases involving, *e.g.*, particularly sophisticated business persons such as those in *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 58 F.Supp.2d 228, 259 (S.D.N.Y.1999), cited by Defendants, MTD, at 15). *See also Eidelman*, 2017 WL 4277187, at *3; *Stoltz*, 2015 WL 5579872, at *20; *Mullins*, 178 F. Supp. 3d at 892; *Asis Internet Servs.*, 2010 WL 1267763, at *2. Defendants' suggestion that the "truth was accessible" or that Plaintiffs failed to exercise "minimal diligence," MTD, at 15-16, is particularly inapposite as all Plaintiffs made their initial purchasing decisions at the point of sale based on Defendants' product packaging. *See* SAC, at ¶¶ 16-24. *See also Stoltz*, 2015 WL 5579872, at *22 (denying dismissal

in consumer claims premised on misleading product packaging and premium prices). It is also galling given Defendants' attempt to minimize the fact multiple Plaintiffs checked Nellie's website, MTD, at 10 n. 6, which reinforced Defendants' product packaging. SAC, at ¶¶ 16, 21. *See also Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (denying dismissal in consumer fraud case in which "the published information [on defendants' website and Facebook page] emphasizes the plausibly misleading trademark."). *Cf. Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 165 (S.D.N.Y. 2014) (case cited by Defendants, MTD, at 15-16, denying dismissal with respect to plaintiffs for deceptions "wholly within the defendant's control," while granting dismissal with regard to plaintiffs who failed to notice defendants' alleged deception was revealed in the same documents plaintiffs alleged was deceptive); *Stoltz*, 2015 WL 5579872, at *22 (acknowledging *Ward* and denying dismissal).

## B.   Plaintiffs Adequately Pled Breach of Express Warranty

"To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg*, 8 F.Supp.3d at 482. "[A] plaintiff complaining of breach of express warranty must 'set forth the terms of the warranty upon which he relied.'" *Id*. As explained above, Plaintiffs have identified specific claims made on Defendants' product packaging, as well as on Defendants' website, which are false by necessary implication. *See* SAC, at ¶¶ 16-24, 92, 98. *See also Time Warner Cable*, 497 F.3d at 158; *Clorox Co. Puerto Rico*, 228 F.3d at 34-39. Plaintiffs have also identified commercially unnecessary, inhumane animal husbandry practices in which Defendants engage—and which they reasonably believe Defendants' advertising contradicts. SAC, at ¶¶ 16-24, 76, 84, 92, 98, 117. As explained by the Southern District of New York in *Goldemberg*, the case Defendants

20

concede as the standard for breach of express warranty, MTD, at 17, this is enough to survive dismissal. 8 F.Supp.3d at 482 (the label 'Active Naturals' on defendant's products and website could be deemed an express warranty because the website elaborated that they are "trusted . . . by dermatologists for the efficacy and safety of [their] natural ingredients."). Because there is not a sufficient basis for this Court to "determine as a matter of law that the statements are not misleading" under consumer law, "it is equally inappropriate to determine they are not misleading for the warranty claim." *Id.*

Defendants' argument that they did not receive sufficient notice, MTD, at 17-18, is also unavailing. A filed complaint itself is sufficient notice. *See Panda Capital Corp. v. Kopo Int'l, Inc.*, 662 N.Y.S.2d 584, 586 (N.Y. App. Div. 1997) ("This argument overlooks the fact that the complaint and subsequent amended complaint in this action themselves constituted such notice."); *accord In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1009 (S.D. Cal. 2011) (recognizing a "significant body of case law from around the country holds that the reasonable notice requirements of U.C.C. § 2-607(3)(a) should be judged under a relaxed standard when the suit is brought by a retail consumer of the product . . . [and] under the laws of a number of states, the filing of a complaint can serve as notice."). This is particularly apt where, as here, Plaintiffs allege Defendants knew, or were willful in not knowing, of their deficient performance. *See* SAC, at ¶¶ 131, 138, 148, 156, 163, 170, 177, 184, 191, 198. *See also Panda Capital Corp.*, 242 A.D.2d at 692 (recognizing that defendant's "pattern of deficient performance [was] known prior to the shipments reflected in the invoices"). Finally, notice is not required when a plaintiff is a retail customer of a product "for human consumption, particularly those that are edible." *Tomasino v. Estee Lauder Companies, Inc.*, No. 13 Civ. 4692 (ERK)(RML), 2015 WL 4715017, at *4 (E.D.N.Y. Aug. 7, 2015). *See also Fischer v. Mead*

*Johnson Lab.*, 41 A.D.2d 737, 341 N.Y.S.2d 257 (N.Y.App.Div.1973) ("The prescription of timely notice under the code provision is to be applied, if at all, differently in commercial and retail sales situations. . . . [S]ection 2-607 of the Uniform Commercial Code, was not applicable in situations involving goods sold for human consumption.") (internal citations omitted).

### C.   Plaintiffs' Allegations Adequately Support Injunctive Relief

Defendants misstate both Plaintiffs' allegations and the law in arguing Plaintiffs lack standing for injunctive relief because "Plaintiffs allege that if they had known then what they know now, they would not have purchased Nellie's eggs."  MTD, at 19. Plaintiffs "certainly ha[ve] standing when they, as is the case here, assert they will purchase a product in the future if the ingredients are changed so that the product is not mislabeled."  *Petrosino v. Stearn's Prod., Inc.*, No. 16 Civ. 7735 (NSR), 2018 WL 1614349, at *4–5 (S.D.N.Y. Mar. 30, 2018) (plaintiff's willingness to purchase products "again if the ingredients were changed so that they indeed were 'Natural' . . . demonstrate[s] an intent to purchase products in the future that subjects them to future harm."); *accord Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir.) ("[T]he threat of future harm may be . . . the consumer's plausible allegations that she might purchase the product in the future . . . as she may reasonably, but incorrectly, assume the product was improved."). Plaintiffs clear this bar. Each alleges they would "consider purchasing Nellie's eggs in the future if Defendants were to treat chickens in a manner consistent with their advertising."  SAC, at ¶¶ 16-24.

### V.   <u>Plaintiffs Have Met Their Jurisdictional Burden at the Pleading Stage</u>

Plaintiffs have met their burden of establishing this Court's jurisdiction at the pleading stage by alleging that Defendants "market and sell thousands, if not millions, of eggs throughout New York and Manhattan on a daily basis," that Defendants' "deceptive practices, misrepresentations and omissions alleged were contained on Nellie's packaging and cartons of

eggs sold on a daily basis uniformly to consumers throughout New York," and that a plurality of named Plaintiffs "purchased eggs from Nellie's in stores located in Manhattan as well as other parts of New York."  SAC, at ¶¶ 12-13.

Defendants' arguments under Rule 12(b)(2) that this Court lacks jurisdiction over the claims of non-New York Plaintiffs and putative class members, MTD, at 20-23, depends on one case: *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1785 (2017).[6]  This case does not apply to either class actions or federal cases. The holding of *Bristol-Myers* rested on that case's status as a mass tort filed in state court. *Id.* at 1777; *see also id*. at 1789 n.4 ("The Court today does not confront the question whether its opinion here would also apply to a class action . . . .") (Sotomayor, J., dissenting). As this district has recognized, "[m]ost district courts have concluded Bristol-Myers does not apply to federal-court class actions . . . ." *Suarez*, 2019 WL 1046662, at *6 n.4 (S.D.N.Y. Mar. 5, 2019). *See also Parks v. Ainsworth Pet Nutrition*, LLC, 377 F. Supp. 3d 241, 250 (S.D.N.Y. 2019) (declining to rule on personal jurisdiction for out-of-state plaintiffs' claims until class certification); *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1332 (D. Minn. 2018) (collecting cases showing "district courts have largely declined to extend *BMS* to the class action context"); *Allen v. ConAgra Foods, Inc.*, Case No. 3:13 Civ. 01279, 2018 WL 6460451, at *7 (N.D. Cal. Dec. 10, 2018) (holding requirements of Fed. R. Civ. P. 23 set class actions apart from mass torts); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17 Civ. 00564 (NC), 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) (same).

Instead, this Court should follow the process applied by this district in similar cases: that, since Defendants are "indisputably subject to the Court's specific jurisdiction" as to the New

---

[6] Defendants also cite a secondary source—which was "focus[ed] on state court jurisdiction" and directed its readers to Wright and Miller to consider the federal effects. William Rubenstein, *Newberg on Class Actions* § 6:26. Wright and Miller noted cases finding inapplicability. *Federal Practice and Procedure* § 1067.2.

York Plaintiffs' claims, Defendants' Motion to Dismiss should be denied and "personal jurisdiction over [Plaintiffs'] out-of-state claims . . . assessed at the class certification stage." *Suarez,* 2019 WL 1046662, at *6. *See also Parks*, 377 F. Supp. 3d at 250.

In the event this Court decides it requires further proof of personal jurisdiction as to out-of-state named Plaintiffs, it should permit jurisdictional discovery. Under New York law, plaintiffs are allowed "discovery regarding the issue of personal jurisdiction if they have made a sufficient start, and shown their position not to be frivolous." *Newbro v. Freed*, No. 03 Civ. 10308(PKC), 2004 WL 691392, at *3 (S.D.N.Y. Mar. 31, 2004). Plaintiffs have made more than just a sufficient start. In diversity cases, this Court has specific jurisdiction over an out-of-state defendant if New York's long-arm statute, N.Y. C.P.L.R. § 302, provides jurisdiction over the defendant and if doing so does not offend due process. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). New York's long-arm statute provides courts with jurisdiction "over any [foreign corporation] . . . who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state . . . ." N.Y. C.P.L.R. § 302(a).

Defendants do not contest Plaintiffs' allegations as to the magnitude of their business conducted in New York. MTD, at 19-25. It also appears likely that jurisdictional discovery will show that much of Defendants' deceptive advertising in the relevant period was created in Manhattan. Exhibits 1-3, Declaration of Jeanne Christensen, at ¶¶ 2-7 (attaching evidence that a Manhattan-based advertising agency has been responsible for "all strategy, creative, and production" for Nellie's "consumer-facing campaigns" and website, including campaigns focused on communicating "the benefits of humane, ethical eggs produced on small family farms to consumers across the country" since, at latest, 2016). Together, this satisfies New York's

long-arm statute and due process. *See Legros v. Irving*, 354 N.Y.S.2d 47 (N.Y. Sup. Ct. 1973) (long-arm jurisdiction satisfied against non-resident defendant with regard to a book whose New York publication he participated in). *See also Int'l Playthings LLC v. Toy Teck Ltd., LLC*, No. 11 Civ. 6832 (KM), 2013 WL 8184357, at *2 (D.N.J. July 23, 2013) (jurisdictional discovery justified on due process grounds when corporate defendant's contact with forum state was hiring an in-state advertising agency); *CoolSavings.Com, Inc. v. IQ.Commerce Corp.*, 53 F. Supp. 2d 1000, 1002-03 (N.D. Ill. 1999) (holding jurisdiction existed over out-of-forum defendant whose only contacts were a website accessible anywhere and hiring an in-forum advertising agency).

Defendants' arguments in favor of transfer to the District of New Hampshire, MTD, at 23-24, are similarly premature. For example, while Defendants cite witness convenience, the location of relevant evidence, the locus of operative facts, and other factors going to the interests of justice, MTD, at 23-24, it is Defendants who, presumably, possess information about where and how Defendants' deceptive advertising was created and disseminated, the corporate structure and relationship between Defendants, where Nellie's laying hens are raised, where Nellie's eggs are brought to be packaged and distributed, in what states Nellie's eggs are sold in, and at what prices. These questions underlay both the Fed. R. Civ. P. 23 class certification process and the appropriateness of discovery on these issues as prelude to class certification.[7]

---

[7] Defendants also requested a stay of fact discovery while their motion to dismiss is pending. MTD, at 25. Plaintiffs are mindful of the need, or potential need, for discovery on jurisdiction, class certification, and the merits to proceed in an orderly manner. Plaintiffs are ready to proceed with discovery on all issues at the direction of the Court and following completion of the parties' obligations under Fed R. Civ. P. 26(f) and this Court's entering of a civil case management plan and scheduling order.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request this Court deny Defendants'

Motion to Dismiss in its entirety.

Dated: October 25, 2019
      New York, New York                    Respectfully submitted,

                                   **WIGDOR LLP**

                                   By: _____
                                      Jeanne M. Christensen
                                      Julia Elmaleh-Sachs

                                 85 Fifth Avenue
                                 New York, NY 10003
                                 Telephone: (212) 257-6800
                                 Facsimile: (212) 257-6845
                                 jchristensen@wigdorlaw.com
                                 jelmaleh-sachs@wigdorlaw.com

                                 Asher Smith
                                 PETA FOUNDATION
                                 1536 16th Street, NW
                                 Washington, DC 20036
                                 Telephone: (202) 483-7382
                                 Facsimile: (202) 540-2208
                                 AsherS@petaf.org

                                 *Counsel for Plaintiffs*