UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELLE LUGONES; TRICIA RIZZI;
MARCUS SIEZING; CLAUDIA VASSALLO;
DENISE ALVARADO; MINOEE MODI;
ISABELLE GRAY; KARINE SEWELL; ANNE
FLOURNOY; and SONJA ROMANO,

                              Plaintiffs,

                    -v.-

PETE AND GERRY'S ORGANIC, LLC and
NELLIE'S FREE RANGE EGGS,

                              Defendants.

19 Civ. 2097 (KPF)

**<u>OPINION AND ORDER</u>**

KATHERINE POLK FAILLA, District Judge:

Plaintiffs bring this action, on behalf of themselves and as proposed

representatives of a putative class of similarly situated individuals, against

Defendant Pete and Gerry's Organic, LLC.[1]  Plaintiffs allege that they

purchased Defendant's eggs, branded as Nellie's Free Range Eggs, based on

Defendant's advertisements indicating that Defendant's hens are loved and are

given ample access to open, green spaces in which they can peck, perch, and

play.  However, Plaintiffs allege that this advertising is a lie, and conceals the

facts that (i) Defendant's hens are kept in tightly constricted spaces, with no

real access to the outdoors, and (ii) the hens are subject to numerous

husbandry practices that Plaintiffs oppose, such as beak-cutting and culling.

---

[1]     Although both Pete and Gerry's Organic, LLC and Nellie's Free Range Eggs are named
        as Defendants, Pete and Gerry's has represented that Nellie's Free Range Eggs is no
        more than a registered trademark and is therefore not a separate legal entity that can
        be sued.  (Dkt. #18).  Plaintiffs have not challenged Pete and Gerry's representation.
        Therefore, given the lack of any showing that Nellie's Free Range Eggs is an entity that
        can be sued, the Court dismisses it as a Defendant.

Plaintiffs bring a wide variety of state-law statutory claims relating to false and deceptive advertising, as well as claims for fraud, fraudulent misrepresentation, and breach of express warranty, and request damages and injunctive relief. Defendant moves, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), both to dismiss the claims brought by the non-New York plaintiffs and putative class members for lack of personal jurisdiction and to dismiss the complaint as a whole for failure to state a claim for relief. For the reasons set forth in the remainder of this Opinion, Defendant's motion to dismiss for lack of personal jurisdiction is granted in part and denied in part, and Defendant's motion to dismiss for failure to state a claim is granted in part and denied in part.

## BACKGROUND[2]

### A.    Factual Background

Plaintiffs are residents of New York, California, Massachusetts, Georgia, Maryland, and North Carolina. (SAC ¶¶ 16-24). Defendant is a limited liability company formed and headquartered in New Hampshire. (*Id.* at ¶ 25). Plaintiffs purchased Defendant's Nellie's Free Range Eggs in their respective states. (*Id.*

---

[2]    The facts contained in this Opinion are drawn principally from Plaintiff's Second Amended Class Action Complaint, which is the operative pleading in this case and is referred to in this Opinion as the "SAC." (Dkt. #29). The Court has also, in its consideration of Defendant's Rule 12(b)(2) motion, evaluated certain exhibits attached to the Declaration of Jeanne Christensen in Opposition to Defendants' Motion to Dismiss Under Rule 12(b)(2) (Dkt. #33), although the Court does not cite to them in this Opinion.

For ease of reference, the Court refers to the parties' briefing as follows: Defendant's opening brief as "Def. Br." (Dkt. #31); Plaintiffs' opposition brief as "Pl. Opp." (Dkt. #32); and Defendant's reply brief as "Def. Reply" (Dkt. #34).

at ¶¶ 16-24).  In making their respective decisions to purchase the eggs, Plaintiffs relied on a combination of slogans, descriptions, and images on the Nellie's Free Range Eggs containers.  (*Id.*).  The slogans included such statements as: "WE LOVE OUR HENS, YOU'LL LOVE OUR EGGS"; "WE LOVE OUR HENS"; "BETTER LIVES FOR HENS MEAN BETTER EGGS FOR YOU!"; and "OUTDOOR FORAGE."  (*Id.*).  The container also claimed that "[m]ost hens don't have it as good as Nellie's," because Nellie's hens "can peck, perch, and play on plenty of green grass."  (*Id.*).  Finally, the containers all included imagery highlighting young children playing with hens in an open field.  (*Id.* at ¶ 46).  Based on these slogans, statements, and images, Plaintiffs believed that Nellie's Free Range Eggs were "sourced from small farms providing all chickens with space to move around both indoors and outdoors, as well as freedom from chick culling, beak-cutting, calcium depletion[,] and sale to commercial slaughterhouses and live markets."  (*Id.* at ¶ 16).  Defendant's website, it is alleged, only reinforced these beliefs.  (*Id.*).

Plaintiffs allege that Defendant's hens face a far different and grimmer reality than Defendant's advertising indicates.  (SAC ¶¶ 7-8).  In contrast to Defendant's idyllic images of happy hens in green pastures, Defendant's hens are instead crammed "into sheds up to 20,000 at a time … prevent[ing] them from extending their wings, foraging or making their way to the outdoor space [Defendant] advertises so prominently."  (*Id.* at ¶ 7).  In addition, Defendant mutilates its hens' beaks.  (*Id.* at ¶ 8).  And once Defendant's hens have laid so many eggs that they are depleted of the calcium "needed to lay eggs strong

enough to make it to market," Defendant "sells them to slaughterhouses and live markets that kill them." (*Id.*).  Plaintiffs allege that if they had known the truth about Defendant's practices, they would not have paid premium prices for Defendant's eggs. (*Id.* at ¶¶ 16-24).  Moreover, Plaintiffs "would only consider purchasing Nellie's eggs in the future if Defendant[] were to treat chickens in a manner consistent with [its] advertising." (*Id.* at ¶¶ 16-24).

**B.    Procedural Background**

Plaintiffs initiated this action and filed their original Complaint on March 6, 2019. (Dkt. #1).  Plaintiffs then amended their Complaint and added additional parties on May 7, 2019, prior to Defendant responding. (Dkt. #10).  On May 20, 2019, Defendant requested a conference to discuss its anticipated motion to dismiss (Dkt. #18), to which Plaintiffs responded on May 30, 2019 (Dkt. #22).  The parties appeared before the Court for a pre-motion conference on June 27, 2019, at which the Court set both a date by which Plaintiffs could again amend their complaint and a briefing schedule for Defendant's motion to dismiss. (Minute Entry of June 27, 2019).

Plaintiffs filed their SAC on July 29, 2019. (Dkt. #29).  The SAC alleged violations of New York General Business Law ("GBL") Sections 349 and 350; California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 to 17210; California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 to 17509; Maryland's Unfair or Deceptive Trade Practices Law, Md. Code Ann., Com. Law § 13-301; North Carolina's Unfair & Deceptive Trade Practices Law, N.C. Gen. Stat. § 75-1.1; Massachusetts's Consumer Protection Act, Mass. Gen. Laws

4

Ann. Ch. 93A, §§ 1 to 11; and Georgia's Fair Business Practices Act, Ga. Code Ann. §§ 10-1-390 to 10-1-408. (SAC ¶¶ 128-88). The SAC also alleged common-law claims for fraud, fraudulent representation, and breach of express warranty, without specifying any particular state statutes. (*Id.* at ¶¶ 189-208).

Defendant filed its motion to dismiss, with an accompanying memorandum of law, on September 16, 2019. (Dkt. #30, 31). Plaintiffs responded with an opposing memorandum and supporting declaration on October 25, 2019. (Dkt. #32, 33). Defendant filed its reply brief on November 8, 2019. (Dkt. #34).

## DISCUSSION

### A. The Court Grants in Part Defendant's Motion to Dismiss for Lack of Personal Jurisdiction

#### 1. Motions to Dismiss Under Rule 12(b)(2)

"A court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question." *Cohen* v. *Facebook, Inc.*, 252 F. Supp. 3d 140, 148 (E.D.N.Y. 2017) (citing *Arrowsmith* v. *United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963)). Therefore, the Court will first address Defendant's motion to dismiss the claims of the named Plaintiffs and putative class members residing outside New York for lack of personal jurisdiction.

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). To survive a motion to dismiss, a plaintiff need only provide

"legally sufficient allegations of jurisdiction." *Id.* A plaintiff makes such a showing through "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* at 567 (quoting *Ball* v. *Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Plaintiff's jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]" *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (quoting *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)). Where a court does not hold an evidentiary hearing on the jurisdictional question, it may, nevertheless, consider matters outside the pleadings. *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).

There are three requirements that must be met in order for a court to exercise personal jurisdiction: "First, the plaintiff's service of process upon the defendant must have been procedurally proper. Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective. ... Third, the exercise of personal jurisdiction must comport with constitutional due process principles." *Waldman* v. *Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (quoting *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012)). In order to assure that the last prong has been satisfied, a court must determine both "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant and whether the assertion of personal jurisdiction over the defendant comports with traditional

notions of fair play and substantial justice under the circumstances of the particular case." *Johnson* v. *UBS AG*, — F. App'x —, No. 18-2906, 2019 WL 5802323, at *1 (2d Cir. Nov. 7, 2019) (internal quotation marks omitted) (citing *Waldman*, 835 F.3d at 331).

"In analyzing the minimum contacts requirement, courts have distinguished between two bases for personal jurisdiction: specific jurisdiction and general jurisdiction." *Johnson*, 2019 WL 5802323, at *1.  There are three conditions that must be met for the exercise of specific jurisdiction: (i) "the defendant must have purposefully availed itself of the privileges of conducting activities within the forum State or have purposefully directed its conduct into the forum State," *U.S. Bank N.A.* v. *Bank of America N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (quoting *Bristol-Myers Squibb Co.* v. *Superior Court of California*, 137 S. Ct. 1773, 1785 (2017)); (ii) "the plaintiff's claims must arise out of or relate to the defendant's forum conduct," *id.* (quoting *Bristol-Myers*, 137 S. Ct. at 1786); and (iii) "the exercise of jurisdiction must be reasonable under the circumstances," *id.* (quoting *Bristol-Myers*, 137 S. Ct. at 1786).  Where there is no connection between the forum and the underlying controversy, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *See Bristol-Myers*, 137 S. Ct. at 1781 (citing *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 931 (2011)).

### 2. The Court Lacks Specific Jurisdiction over the Non-New York Named Plaintiffs' Claims

Defendant argues that the Court lacks personal jurisdiction over the claims asserted by any of the Plaintiffs or putative class members not residing

7

in New York.  (Def. Br. 19).  Neither side claims that the Court has general jurisdiction over Defendant, a company based in New Hampshire.  Moreover, Defendant does not contest that this Court can exercise specific jurisdiction over the claims of the New York-based Plaintiffs, which include Michelle Lugones, Tricia Rizzi, Marcus Siezing, Claudia Vassallo, and Anne Flournoy (hereinafter, the "New York Plaintiffs").  The relevant inquiry is whether the Court can exercise specific jurisdiction over the claims brought by Plaintiffs and putative class members who are not based in New York.

The Supreme Court's analysis in *Bristol-Myers* convinces the Court that it cannot exercise specific jurisdiction over the claims brought by the named Plaintiffs who lack ties to New York.  In *Bristol-Myers*, a collection of California and non-California residents brought a mass tort claim regarding Plavix, a prescription drug, in California against Bristol-Myers Squibb, a non-California company.  *See* 137 S. Ct. at 1777-78.  The non-California plaintiffs did not allege that they either obtained Plavix in California or that they were injured by Plavix in California.  *See id.* at 1778.  The Supreme Court held that, under such circumstances, there could be no specific jurisdiction in California over the non-California plaintiffs' claims, given the lack of any connection between the forum and the claims.  *See id.* at 1782.

Similarly here, Plaintiffs Denise Alvarado, Minoee Modi, Isabelle Gray, Karine Sewell, and Sonja Romano do not allege any facts that connect their claims to New York.  These non-New York Plaintiffs do not claim that they purchased Defendant's eggs in New York or that they were exposed to

Defendant's marketing or advertising in New York.  The SAC does allege that Defendant "market[s] and sell[s] thousands, if not millions, of eggs throughout New York and Manhattan on a daily basis" (SAC ¶ 13), but that merely shows that Defendant has established a connection to New York, and not that the non-New York Plaintiffs' claims arise out of or relate to that connection.  Given the absence of any facts establishing a connection between the non-New York Plaintiffs' claims and the forum, *Bristol-Myers* must control here.

Plaintiffs argue that *Bristol-Myers* does not apply in this case because this is a putative class action in federal court, as opposed to a non-class action in state court.  (*See* Pl. Opp. 23).  Although there is disagreement as to whether and to what extent *Bristol-Myers* applies in the class action context, *see Bank* v. *CreditGuard of America*, No. 18 Civ. 1311 (PKC) (RLM), 2019 WL 1316966, at *12 n.11 (E.D.N.Y. Mar. 22, 2019), "[t]he overwhelming majority of federal courts have held that *Bristol-Myers* applies to claims brought by named plaintiffs in class actions," *Sloan* v. *General Motors LLC*, No. 16 Civ. 7244 (EMC), 2019 WL 6612221, at *9 (N.D. Cal. Dec. 5, 2019).  Indeed, even *Suarez* v. *California Natural Living, Inc.*, on which Plaintiffs rely (*see* Pl. Opp. 23), notes that "[s]pecific jurisdiction in a class action arises from the <u>named</u> plaintiff's causes of action."  No. 17 Civ. 9847 (VB), 2019 WL 1046662, at *6 (S.D.N.Y. Mar. 5, 2019) (emphasis in original).  Plaintiffs have cited to no case, and certainly no case in the Second Circuit, that holds that *Bristol-Myers* does not apply to named plaintiffs' claims in a class action.  The Court agrees with the

9

weight of authority that *Bristol-Myers* controls, and dismisses the non-New

York named Plaintiffs' claims.[3]

    With that said, the Court will not at this stage in the litigation dismiss

the claims of *potential* class members who may not reside in New York.  At this

point, any claims brought by the putative class are hypothetical, and the Court

has no knowledge of who will be asserting such claims or what the bases for

specific jurisdiction might be.  The Court concludes that it is wiser to follow the

course of its sister courts and defer any assessment of whether there is specific

jurisdiction over the claims of putative non-New York class members until the

class certification stage.  *See Suarez*, 2019 WL 104662, at *6 (finding that "the

Court need not assess personal jurisdiction over plaintiff's putative out-of-state

class action claims unless and until the Court decides a class comprising out-

of-state class members merits classification"); *Gonzalez* v. *Costco Wholesale*

---

[3]    Plaintiffs argue that if the Court finds that it lacks personal jurisdiction over the non-New York named Plaintiffs, the Court should permit Plaintiffs to engage in jurisdictional discovery.  (Pl. Opp. 24).  "[W]hether to grant jurisdictional discovery when plaintiffs fail to make a *prima facie* showing of personal jurisdiction is within the court's discretion." *Williams* v. *Summit Marine, Inc.*, No. 18 Civ. 0216 (GLS) (ATB), 2019 WL 4142635, at *6 (N.D.N.Y. Aug. 30, 2019) (citing *Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 255 (2d Cir. 2007)).  Indeed, a federal court may "order limited discovery to establish personal jurisdiction so long as plaintiff has made a threshold showing of jurisdiction and established that his jurisdictional position is not frivolous." *Newbro* v. *Freed*, No. 03 Civ. 10308 (PKC), 2004 WL 691392, at *3 (S.D.N.Y. Mar. 31, 2004).  However, Plaintiffs here have made no threshold showing upon which the Court would be warranted in granting jurisdictional discovery.  All that Plaintiffs point to is that Defendant has generally contracted with a New York-based advertising agency for its marketing.  (*See* Pl. Opp. 24).  But as the Supreme Court has made clear, "a defendant's relationship with a ... third party, standing alone, is an insufficient basis for jurisdiction." *See Walden* v. *Fiore*, 571 U.S. 277, 286 (2014).  Plaintiffs' request for jurisdictional discovery is denied.

Additionally, Defendant asked, in the alternative to its Rule 12(b)(2) motion, that the Court transfer this action to the District of New Hampshire.  (*See* Def. Br. 26).  As the Court has dismissed the non-New York named Plaintiffs, the Court will not consider the alternative motion to transfer.

Case 1:19-cv-02097-KPF   Document 35   Filed 02/21/20   Page 11 of 30

district court lacks the statutory or constitutional power to adjudicate it."
*Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016)
(quoting *Makarova* v. *United States,* 201 F.3d 110, 113 (2d Cir. 2000)).

The Second Circuit has identified two types of Rule 12(b)(1) motions:
facial and fact-based.  *See Carter* v. *HealthPort Technologies, LLC,* 822 F.3d 47,
56-57 (2d Cir. 2016); *see also Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114,
119 (2d Cir. 2017).  A facial Rule 12(b)(1) motion is one "based solely on the
allegations of the complaint or the complaint and exhibits attached to it."
*Carter*, 822 F.3d at 56.  A plaintiff opposing such a motion bears "no
evidentiary burden."  *Id.*  Instead, to resolve a facial Rule 12(b)(1) motion, a
district court must "determine whether [the complaint and its exhibits] allege[ ]
facts that" establish subject matter jurisdiction.  *Id.* (quoting *Amidax Trading
Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)).  And to
make that determination, a court must accept the complaint's allegations as
true "and draw[ ] all reasonable inferences in favor of the plaintiff."  *Id.* at 57
(internal quotation marks and citation omitted).

"Alternatively, a defendant is permitted to make a fact-based
Rule 12(b)(1) motion, proffering evidence beyond the complaint and its
exhibits."  *Carter*, 822 F.3d at 57; *see also MMA Consultants 1, Inc.* v. *Rep. of
Peru*, 719 F. App'x 47, 49 (2d Cir. 2017) (summary order) (defining fact-based
Rule 12(b)(1) motion as one where "the defendant puts forward evidence to
challenge the factual contentions underlying the plaintiff's assertion of subject-
matter jurisdiction").  "In opposition to such a motion, [a plaintiff] must come

12

forward with evidence of their own to controvert that presented by the
defendant, or may instead rely on the allegations in the[ir p]leading if the
evidence proffered by the defendant is immaterial because it does not
contradict plausible allegations that are themselves sufficient to show
standing." *Katz*, 872 F.3d at 119 (internal citations and quotations omitted).  If
a defendant supports his fact-based Rule 12(b)(1) motion with "material and
controverted" "extrinsic evidence," a "district court will need to make findings of
fact in aid of its decision as to subject matter jurisdiction."  *Carter*, 822 F.3d at
57.

### 2.    Plaintiffs Lack Standing to Pursue Injunctive Relief

Federal courts are courts of limited jurisdiction, "and lack the power to
disregard such limits as have been imposed by the Constitution or Congress."
*Platinum-Montaur Life Scis., LLC* v. *Navidea Biopharmaceuticals, Inc.*, 943 F.3d
613, 616 (2d Cir. 2019).  Article III of the Constitution "limits the jurisdiction of
federal courts to 'Cases' and 'Controversies,'" thereby "restrict[ing] the authority
of federal courts to resolving 'the legal rights of litigants in actual
controversies.'"  *Genesis Healthcare Corp.* v. *Symczyk*, 569 U.S. 66, 71 (2013)
(internal quotation marks omitted) (quoting *Valley Forge Christian College* v.
*Americans for Separation of Church and State, Inc.*, 454 U.S. 471 (1982)).  The
"Cases and Controversies" requirement places the burden on "those who invoke
the power of a federal court to demonstrate standing — a 'personal injury fairly
traceable to the defendant's allegedly unlawful conduct and likely to be

13

redressed by the requested relief.'" *Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 90 (2013).

In order to satisfy the first prong of standing — that the plaintiff has suffered an "injury in fact" — the plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.* v. *Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Moreover, "[t]o establish standing to obtain prospective relief, a plaintiff 'must show a likelihood that he will be injured in the future.'" *Carver* v. *City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) (quoting *Shain* v. *Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)).  Either there must be a "substantial risk" that the future injury will occur, or the threatened injury must be "certainly impending." *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 158 (2014).  "'[A]llegations of *possible* future injury' are not sufficient," *Amnesty Int'l*, 568 U.S. at 409, nor is "past exposure to illegal conduct," *City of Los Angeles* v. *Lyons*, 461 U.S. 95, 102 (1983) (internal brackets omitted) (quoting *O'Shea* v. *Littleton*, 414 U.S. 488, 495 (1974)).

Defendant argues that Plaintiffs cannot show that they are likely to suffer any future injury because they have alleged that they do not intend to purchase Nellie's Free Range Eggs unless Defendant changes its practices to mirror its advertising.  (*See* Def. Br. 18-19; SAC ¶¶ 16-18, 24).  Plaintiffs contend that this misstates the law, and point to *Petrosino* v. *Stearn's Prod., Inc.*, No. 16 Civ. 7735 (NSR), 2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018), for

support.  (Pl. Opp. 22).  It is indeed the case that the *Petrosino* court found that "a Plaintiff certainly has standing when they … assert that they will purchase a product in the future if the ingredients are changed so that the product is not mislabeled."  2018 WL 1614349, at *5.  However, a more thorough survey of authority in the Second Circuit suggests that *Petrosino* is an outlier in the Circuit's jurisprudence.  *See, e.g., Holve* v. *McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 553 n.10 (W.D.N.Y. 2018) (collecting cases finding that conditional promises to purchase product if product is altered are insufficient to allege future injury).  Indeed, the Second Circuit has held that where a plaintiff has failed to allege that he intends to use the offending product in the future, there is no likelihood of future harm.  *See Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  Plaintiffs have failed to allege any actual intent to purchase Nellie's Free Range Eggs again, and therefore they have not established a likelihood of future injury sufficient to show standing.  Plaintiffs' claims for injunctive relief are dismissed.[6]

## C.    The Court Grants in Part Defendant's Rule 12(b)(6) Motion

### 1.    Motions to Dismiss Under Rule 12(b)(6)

Having dismissed the non-New York named Plaintiffs' claims for lack of personal jurisdiction and the claims seeking injunctive relief for lack of standing, the Court now turns to whether the remaining Plaintiffs have stated

---

[6]    "Moreover, because Plaintiffs do not individually have standing to seek injunctive relief, they do not have standing to seek injunctive relief on behalf of a putative … class." *O'Neill* v. *Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 527 (S.D.N.Y. 2018) (internal quotation marks and brackets omitted) (quoting *Buonasera* v. *Honest Co., Inc.*, 208 F. Supp. 3d 555, 565 (S.D.N.Y. 2016)).

a claim upon which relief can be granted.  When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

### 2.    Plaintiffs Have Stated Claims Under GBL Sections 349 and 350

Plaintiffs have brought consumer protection claims under GBL §§ 349 and 350.  (SAC §§ 128-41).  "The standard for recovery under General Business

16

Law § 350, while specific to false advertising, is otherwise identical to section 349," *Goshen* v. *Mutual Life Insurance Co. of New York*, 98 N.Y.2d 314, 324 n.1 (2002), and therefore the Court will merge its analysis of the two claims. In order to plead a sufficient claim under either § 349 or § 350, "a plaintiff must allege that the defendant [i] engaged in consumer-oriented conduct; [ii] that the conduct was materially misleading; and [iii] that the plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Weisblum* v. *Prophase Labs. Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015). Plaintiffs are not required to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) for their claims. *See Daniel* v. *Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 186 (E.D.N.Y. 2018).

Defendant primarily argues that Plaintiffs have failed to plead that Defendant's conduct was materially misleading. (*See* Def. Br. 6, 11-12). Although Defendant challenges the materiality of virtually all statements that appear on its containers (*see id.* at 6-11), the universe of relevant alleged misrepresentations is considerably smaller. In order to plead a § 349 or § 350 claim successfully, Plaintiffs must allege that they saw the misleading statements of which they complain before they purchased or came into possession of Defendant's eggs. *See Tyman* v. *Pfizer, Inc.*, No. 16 Civ. 6941 (LTS) (BCM), 2017 WL 6988936, at *24 (S.D.N.Y. Dec. 27, 2017), *report and recommendation adopted*, No. 16 Civ. 6941 (LTS) (BCM), 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018); *Goldemberg* v. *Johnson & Johnson Consumer Cos.*,

17

*Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014).[7]  Thus, Plaintiffs' claims can only

be based on alleged statements and images that Plaintiffs claim to have viewed

before they purchased the eggs.  These include statements such as:  "WE LOVE

OUR HENS, YOU'LL LOVE OUR EGGS"; "WE LOVE OUR HENS"; "BETTER

LIVES FOR HENS MEAN BETTER EGGS FOR YOU"; "OUTDOOR FORAGE";

and images of young children playing with hens in green, open fields.  (SAC

¶¶ 16-18, 24, 46).  Plaintiffs' also allege that they relied on the following

paragraph, which was printed on the container, prior to purchasing

Defendant's eggs:

> **Most hens don't have it as good as Nellie's**.  9 out of
> 10 hens in the U.S. are kept in tiny cages at giant egg
> factories housing millions of birds.  Sadly, even "cage-
> free" is now being used to describe hens that are
> crowded into large, stacked cages on factory farms, who
> never see the sun.  Nellie's small family farms are all
> Certified Humane Free-Range.  Our hens can peck,
> perch, and play on plenty of green grass.

(*Id.* at ¶ 46).  Importantly, this also means that the alleged representations that

Plaintiffs do not claim to have seen before purchasing the eggs are non-

actionable.  Plaintiffs allege that they checked Defendant's website, but they do

not allege that they viewed it prior to purchasing Nellie's Free Range Eggs.  (*See*

*id.* at ¶ 16).  Plaintiffs cannot show either that they relied on Defendant's

---

[7]    Section 350 requires a plaintiff to plead that they relied on a defendant's statements at
the time of purchase, *Horowitz* v. *Stryker Corp.*, 613 F. Supp. 2d 271, 288 (E.D.N.Y.
2009), but § 349 does not require reliance, *see Belfiore* v. *Proctor & Gamble Co.*, 94 F.
Supp. 3d 440, 446 (E.D.N.Y. 2015).  Section 349 does, however, require that a plaintiff
plead causation, *see Belfiore*, 94 F. Supp. 3d at 446, and thus the pleading
requirements end up being much the same, *see Tyman* v. *Pfizer, Inc.*, No. 16 Civ. 6941
(LTS) (BCM), 2017 WL 6988936, at *24 (S.D.N.Y. Dec. 27, 2017), *report and
recommendation adopted*, No. 16 Civ. 6941 (LTS) (BCM), 2018 WL 481890 (S.D.N.Y.
Jan. 18, 2018).

website prior to purchasing the eggs or that the various statements on Defendant's website caused their injury, and therefore the only relevant alleged misrepresentations are those that were presented on the containers.

Much of the conduct that Plaintiffs allege to be materially misleading is non-actionable. "To establish that conduct is materially misleading, a plaintiff must demonstrate that a reasonable consumer would likely be misled by the alleged misrepresentation." *Sitt* v. *Nature's Bounty, Inc.*, No. 15 Civ. 4199 (MKB), 2016 WL 5372794, at *8 (E.D.N.Y. Sept. 26, 2016). "Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Belfiore* v. *Proctor & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Delgado* v. *Ocwen Loan Servicing, LLC*, No. 13 Civ. 4427 (NGG) (RLM), 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014)). "The entire mosaic is viewed rather than each tile separately." *Id.* (internal quotation marks omitted) (quoting *Time Warner Cable, Inc.* v. *DIRECTV, Inc.*, No. 06 Civ. 14245 (LTS) (MHD), 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007)).

The "reasonable consumer" inquiry is typically a question of fact, *see Sitt*, 2016 WL 5372794, at *8 (quoting *Hidalgo* v. *Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015), and thus best decided at a later stage in the proceeding. But "[s]tatements and practices that are mere puffery are not actionable," *Fink* v. *Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011), and "[c]ourts can determine that a statement is puffery as a matter of law," *Kommer* v. *Ford Motor Co.*, No. 17 Civ. 296 (LEK) (DJS), 2017

WL 3251598, at *3 (N.D.N.Y. July 28, 2017) (citing *Leonard* v. *Abbott Labs., Inc.*, No. 10 Civ. 4676 (ADS) (WDW), 2012 WL 764199, at *21 (E.D.N.Y. Mar. 5, 2012)).  "Puffery includes generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely." *Id.*  It can also include "an exaggeration or overstatement expressed in broad, vague, and commendatory language, as distinguished from misdescriptions or false representations of specific characteristics of a product." *Id.* (internal brackets omitted) (quoting *Castrol Inc.* v. *Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)).

Defendant's advertising, "WE LOVE OUR HENS, YOU'LL LOVE OUR EGGS," or more simply, "WE LOVE OUR HENS," or even that "BETTER LIVES FOR HENS MEAN BETTER EGGS FOR YOU" are paradigmatic examples of puffery.  Such statements "do not provide any concrete representations," *Fink*, 810 F. Supp. 2d at 644, but are instead "subjective claims about products, which cannot be proven either true or false," *Time Warner Cable, Inc.* v. *DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) (internal brackets omitted) (citing *Lipton* v. *Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995)).  Indeed, "[s]uch sales talk … is considered to be offered and understood as an expression of the seller's opinion only ….  The 'puffing' rule amounts to a seller's privilege to lie his head off, so long as he says nothing specific." *Id.* (quoting *Pennzoil Co.*, 987 F.2d at 945).  Insofar as Plaintiffs interpreted such statements to mean that Defendant's hens were free "from chick culling, beak-cutting, calcium depletion[,] and sale to commercial slaughterhouses and live markets" (SAC

¶¶ 16-18, 24), such an interpretation was unreasonable.  *See Kommer*, 2017 WL 3251598, at *3 (finding statement that car was "Built Ford-Tough" was puffery where plaintiff interpreted statement to mean that the car's door handles would work in below-freezing temperatures).  Plaintiffs cannot make out cognizable claims under GBL §§ 349 and 350 based on such statements.

Plaintiffs have, however, alleged a viable claim in regards to Defendant's statement that "[m]ost hens don't have it as good as Nellie's. …  Our hens can peck, perch, and play on plenty of green grass."  (*See* SAC ¶¶ 16-18, 24).  Unlike Defendant's other statements, which make vague claims about love, this statement makes a factual claim — namely, that Defendant's hens have better lives than other hens because they have more access to the outdoors — upon which a reasonable consumer could rely.  This statement is only reinforced by references to "OUTDOOR FORAGE" and images of hens frolicking in elysian pastures.  (*See id.* at ¶ 46).  In contrast to the cases on which Defendant relies, such as *Pizza Hut, Inc.* v. *Papa John's International, Inc.*, 227 F.3d 489 (5th Cir. 2000), and *Cablevision Systems Corp.* v. *Verizon New York, Inc.*, 119 F. Supp. 3d 39 (E.D.N.Y. 2015) (*see* Def. Br. 8), Defendant's statement provides enough specificity to elevate itself beyond puffery and into potential materiality, *see Cablevision*, 119 F. Supp. 3d at 53 (finding that a claim that Cablevision's data network was "better" than Verizon's was puffery when it lacked "more specificity").

Defendant argues that even if these statements are not puffery, they are still not materially misleading to a reasonable consumer.  (*See* Def. Br. 11).  As

Defendant notes (*see id.* at 12), "plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'" *Jessani* v. *Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (summary order) (quoting *Ebner* v. *Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).  Instead, "Plaintiffs must plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Id.*

There is significant authority supporting the idea that it is inappropriate for a court to decide whether a reasonable consumer could be misled at the Rule 12(b)(6) stage, *see, e.g., Kacocha* v. *Nestle Purina Petcare Co.*, No. 15 Civ. 5489 (KMK), 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) (collecting cases), and the Court finds that authority persuasive here.  In *Kacocha*, the court declined to find as a matter of law that a reasonable consumer would not be misled about the amount of bacon in the defendant's Beggin' Strips Original Bacon Flavor dog food due to the defendant's repeated references to bacon on the product's packaging and in its television commercials.  *See* 2016 WL 4367991, at *15.  Similarly, this Court cannot conclude as a matter of law that a significant portion of the general consuming public would not read Defendant's claims about its hens having plenty of green space to peck, perch, and play in — together with its verdant images and slogans of "OUTDOOR FORAGE" — and not believe that Defendant's hens have significant access to the outdoors.  Plaintiffs have alleged that they believed this advertising to mean that Defendant's hens had "space to move around both indoors and outdoors"

(SAC ¶¶ 16-18, 24), and that this portrait of a free range lifestyle is far from the cramped reality alleged in the SAC (*see id.* at ¶¶ 85-98).  These allegations are all that is needed for Plaintiffs' § 349 and § 350 claims to survive a motion to dismiss.

### 3.     Plaintiffs Have Stated Claims for Fraud and Fraudulent Misrepresentation

Plaintiffs have also brought common-law claims for fraud and fraudulent misrepresentation.  (SAC ¶¶ 189-202).  As this Court sits in diversity and the only remaining Plaintiffs are New York residents that allege conduct transpiring in New York, the Court applies New York's substantive law in analyzing Plaintiffs' common-law claims.  *See Pal* v. *Sinclair*, 90 F. Supp. 2d 393, 397 (S.D.N.Y. 2000) (citing *Holm* v. *Shilensky*, 388 F.2d 54, 56 n.2 (2d Cir. 1968)).  As a preliminary matter, the Court notes that under New York law, fraud and fraudulent misrepresentation claims are identical.  *See Sprint Sols., Inc.* v. *Sam*, 206 F. Supp. 3d 755, 764 (E.D.N.Y. 2016).  In order to establish either or both claims, Plaintiffs must allege: "[i] Defendant made a material false representation; [ii] Defendant intended to defraud Plaintiffs thereby; [iii] Plaintiffs reasonably relied on the representation; and [iv] Plaintiffs suffered damage as a result of such reliance."  *Id.*

Defendant begins by arguing that Plaintiffs have not alleged any material false representations.  (*See* Def. Br. 15).  As already determined above, while Defendant's statements regarding "love" and "BETTER LIVES FOR HENS MEAN BETTER EGGS FOR YOU" are non-actionable puffery, *see EED Holdings* v. *Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 276 (S.D.N.Y. 2004)

23

(explaining that puffery does not amount to actionable misrepresentation in fraud claims), its statements and images concerning its hens' access to the outdoors are adequately alleged to be material and false.  Defendant therefore cannot challenge these claims of misrepresentations as satisfying the first element of Plaintiffs' fraud claim.

However, Defendant argues in the alternative that Plaintiffs have failed to plead that they "reasonably relied on the representation."  (*See* Def. Br. 15). "[A]lthough reasonable reliance is often a 'fact-intensive' question, it 'is a condition which cannot be met where … a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means.'"  *Ward* v. *TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 166 (S.D.N.Y. 2014) (internal citation omitted) (quoting first *DDJ Mgmt., LLC* v. *Rhone Grp. L.L.C.*, 15 N.Y.3d 147, 155 (2010), and then quoting *Arfa* v. *Zamir*, 905 N.Y.S.2d 77, 79 (1st Dep't 2010)).  "[A] plaintiff 'must show minimal diligence or care that negates its own recklessness,'" *id.* (internal quotation marks and brackets omitted) (quoting *Amusement Indus. Inc.* v. *Buchanan Ingersoll & Rooney, P.C.*, No. 11 Civ. 4416 (LAK), 2013 WL 628533, at *12 (S.D.N.Y. Feb. 15, 2013)), unless "matters are held to be peculiarly within defendant's knowledge" and "the plaintiff would have 'no independent means of ascertaining the truth,'" *see id.* (quoting *Crigger* v. *Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)).

Defendant seems to understand the "reasonable reliance" element to mean that Plaintiffs' interpretation of the alleged misrepresentations must have

24

been reasonable.  (*See* Def. Br. 16).  But Defendant misperceives the law.  As made clear above, the "reasonable reliance" element is focused on whether it was foolish or not for the plaintiff to believe the defendant's fraudulent statement.  *See Banque Franco-Hellenique de Commerce Int'l et Mar., S.A.* v. *Christophides*, 106 F.3d 22, 26 (2d Cir. 1997) ("While the law does not require that a defrauded party go to the ends of the earth to discover the falsity of a statement, patent foolishness is not excused.").  As an illustrative example, the plaintiffs in *Ward* alleged that they purchased resume rewriting services based on "expert resume critiques" that the plaintiffs mistook to be bona fide critiques, as opposed to comments designed to induce purchasing the defendant's product.  *See* 3 F. Supp. 3d at 165.  The court found that there was no reasonable reliance because the resume critiques "were followed immediately in the same document by advertisements, which made it abundantly clear that, in offering the critiques, the defendant was attempting to sell its resume writing services."  *See id.* at 166.  There could be no reasonable reliance when plaintiffs were so on notice as to the defendant's misrepresentation.  *See id.*

Within this proper framing, it is clear that Plaintiffs have sufficiently alleged reasonable reliance.  Unlike in *Ward*, Defendant's containers gave Plaintiffs no reason to be on alert as to potential misrepresentations.  Moreover, Plaintiffs would have had no independent means of ascertaining the truth of Defendant's misrepresentations — short of driving themselves to Defendant's facilities and sleuthing about the grounds for the truth.  Such an effort would

25

go far beyond the "minimal diligence" required.  *See id.*  Therefore, on the basis of the same representations found actionable in their GBL §§ 349 and 350 claims, Plaintiffs have successfully alleged fraud and fraudulent misrepresentation under New York law.

### 4.    Plaintiffs Have Failed to State a Breach of Express Warranty Claim

Plaintiffs' final claim alleges that Defendant breached its express warranty by implying that its chickens are "loved, happy, healthy, and [live] low-stress lives on small farms in which they can freely roam," when in fact these affirmations are false.  (SAC ¶¶ 204-05).  "New York breach of express warranty claims require [i] a *material statement* amounting to a warranty; (ii) the buyer's *reliance* on this warranty as a basis for the contract with his immediate seller; (iii) the *breach* of this warranty; and (iv) injury to the buyer *caused* by the breach."  *Brady* v. *Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 235 (E.D.N.Y. 2015) (quoting *Avola* v. *Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013)).  However, in order to assert a breach of express warranty claim under New York law, "a buyer must provide the seller with timely notice of the alleged breach of warranty."  *Quinn* v. *Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (citing N.Y. U.C.C. § 2-607(3)(a)).

Defendant argues that Plaintiffs have not alleged that they provided any notice to Defendant, much less timely notice, and therefore dismissal is required.  (*See* Def. Br. 18).  Plaintiffs respond to this potentially dispositive argument by claiming that the Complaint they filed in this action qualifies as sufficient notice.  (*See* Pl. Opp. 21).  For support, Plaintiffs cite to a single case,

26

*Panda Capital Corp.* v. *Kopo Int'l, Inc.*, 662 N.Y.S.2d 584 (2d Dep't 1997).  (*See id.*).[8]  Insofar as Plaintiffs believe that *Panda Capital* stands for a broad rule that a filed complaint qualifies as sufficient and timely notice, Plaintiffs are mistaken.  All that the *Panda Capital* court found was that where the plaintiff had both filed a complaint and an amended complaint and "had repeatedly made its objections to Kopo's pattern of deficient performance known … it [was] at the very least an issue of fact as to whether reasonably timely notice of breach was given."  *See* 662 N.Y.S.2d at 586-87.  The Court does not believe that such an equivocal statement amounts to a binding rule that Plaintiffs' filed complaint, regardless of its temporal distance from the alleged breach of the warranty, satisfies N.Y. U.C.C. § 2-607(3)(a).

This belief is supported by the Court's inability to locate any authority, from either a New York State court or from within this Circuit, that relies on *Panda Capital* for such a broad rule.  Indeed, *Mid Island LP* v. *Hess Corp.*, 983 N.Y.S.2d 204 (Table), 2013 WL 6421281 (Sup. Ct. Dec. 2, 2013), a New York state court case that cites to *Panda Capital, see id.* at *4, makes clear that "timely notice is a condition *precedent* to bringing an action for breach of warranty," *id.* (emphasis added).  Lacking any more persuasive authority, the Court follows the lead of its sister courts and finds that Plaintiffs must allege some form of timely, pre-litigation notice.  *See, e.g., Colella* v. *Atkins*

---

[8]     Plaintiffs also cite to *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993 (S.D. Cal. 2011) (*see* Pl. Opp. 21), but that case is from outside New York and outside this Circuit and therefore has little persuasive authority in its analysis of New York law.

*Nutritionals, Inc.*, 348 F. Supp. 3d 120, 144 (E.D.N.Y. 2018) (finding that plaintiff failed to state a breach of warranty claim where the complaint made "no allegations and state[d] no facts showing that notice was provided to defendant"); *Singleton* v. *Fifth Generation, Inc.*, No. 15 Civ. 0474 (BKS) (TWD), 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) (same); *Quinn*, 958 F. Supp. 2d at 544 (same).

Plaintiffs also contend that "notice is not required when a plaintiff is a retail customer of a product 'for human consumption, particularly those that are edible.'" (Pl. Opp. 21). However, even the case to which Plaintiffs cite notes that this exception to the notice requirement only seems to apply in circumstances where "a breach of a contract claim amounted to a tort claim in which the plaintiff suffered some personal injury." *See Tomasino* v. *Estee Lauder Cos., Inc.*, No. 13 Civ. 3692 (ERK) (RML), 2015 WL 4715017, at *4 (E.D.N.Y. Aug. 7, 2015). The *Colella* court similarly noted that this "exception appears to be exclusively applied where a party alleges physical, in addition to economic, injury." 384 F. Supp. 3d at 144. The Court agrees with its sister courts' analysis of the New York cases regarding this exception, and finds that it is inapplicable where, as here, Plaintiffs have not alleged any physical or personal injury as a result of Defendant's alleged breach. Plaintiffs' breach of express warranty claim must be dismissed for failure to provide timely notice.

In sum, the Court finds that Plaintiffs have stated claims for fraud and fraudulent misrepresentation and claims pursuant to GBL §§ 349 and 350 on the basis of Defendant's statements on its containers regarding its hens' access

to the outdoors, and therefore denies Defendant's motion to dismiss as to those specific claims.  However, the Court grants Defendant's motion to dismiss insofar as it relates to any representations made on Defendant's website, or to representations on its egg container involving love, or to the statement "BETTER LIVES FOR HENS MEAN BETTER EGGS FOR YOU," and grants Defendant's motion to dismiss as to the entirety of Plaintiffs' breach of express warranty claim.  The Court likewise dismisses Plaintiffs' claims for injunctive relief for failure to allege standing, and dismisses the non-New York named Plaintiffs' claims for lack of personal jurisdiction.  The Court denies Defendant's motion to dismiss for lack of personal jurisdiction insofar as it relates to non-New York putative class members.

## CONCLUSION

For the reasons set forth in this Opinion, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.

Defendant Nellie's Free Range Eggs is dismissed from the case.

Defendant Pete and Gerry's Organic, LLC's motion is GRANTED with respect to all claims brought on behalf of the non-New York named Plaintiffs, and to Plaintiffs' claims for injunctive relief.  Defendant's motion is further GRANTED with respect to Plaintiffs' breach of express warranty claim and with respect to Plaintiffs' fraud, fraudulent misrepresentation, and GBL §§ 349 and 350 claims that rely on statements identified as non-actionable puffery in this Opinion.

Defendant's motion is DENIED with respect to claims that may be brought on behalf of non-New York putative class members at a later stage in this litigation.  Defendant's motion is further DENIED with respect to the Plaintiff's fraud, fraudulent misrepresentation and GBL §§ 349 and 350 claims that rely on statements identified as actionable in this Opinion.

The Clerk of Court is directed to terminate the motion at docket entry 30. The Clerk of Court is further directed to dismiss Denise Alvarado, Minoee Modi, Isabelle Gray, Karine Sewell, and Sonja Romano as Plaintiffs in this action.

On or before **March 13, 2020**, Defendant shall file a responsive pleading.

On or before **March 23, 2020**, the parties shall submit a proposed Case Management Plan, as well as the joint status letter contemplated by the Plan.

SO ORDERED.

Dated:   February 21, 2020
       New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

30